**Richard Roy BUSER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 08–587 T.**

United States Court of Federal Claims.

Jan. 12, 2009.

Richard Roy Buser, Arizona City, AZ, pro se.

G. Robson Stewart, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

SWEENEY, Judge.

Before the court are Defendant's Motion of the United States to Dismiss the Complaint and Brief in Support Thereof, filed pursuant to Rule 12(b)(1) or, alternatively, Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"),

Plaintiff's Application to Proceed *In Forma Pauperis,* and plaintiff's request for a stay of garnishment. In this action, plaintiff seeks a judgment of $32,133.18, which he alleges is the amount wrongfully garnished from his wages by the Internal Revenue Service ("IRS"). Although the court afforded plaintiff ample time—over fifty days—to respond to defendant's motion, he has failed to do so. The court determines that there is no reason to further delay its ruling. For the reasons stated below, the court grants plaintiff's application to proceed *in forma pauperis,* denies plaintiff's request for a stay of garnishment, and grants defendant's motion to dismiss.

## I. BACKGROUND[1]

On January 27, 1999, plaintiff, Richard Roy Buser, and his wife filed a joint tax return for the 1997 tax year. Mot. United States Dismiss Compl. & Br. Supp. Thereof ("Def.'s Mot.") 4; Def.'s Ex. 1 at 2. Plaintiff and his wife filed a joint tax return for the 1998 tax year on January 3, 2000.[2] Def.'s Mot. 4; Def.'s Ex. 2 at 9. The IRS, on November 21, 2001, issued a Notice of Deficiency ("notice") to plaintiff and his wife for the 1997 and 1998 tax years. Def.'s Ex. 3. The November 21, 2001 notice indicated a deficiency of $24,198.00 and penalties of $5,847.00 for the 1997 tax year, as well as a deficiency of $13,843.00 and penalties of $2,768.50 for the 1998 tax year. *Id.* at 14. On March 4, 2002, plaintiff and his wife petitioned the United States Tax Court ("Tax Court"), challenging the November 21, 2001 notice and alleging that the IRS (1) erroneously denied their Schedule C Expenses for 1997 and 1998, (2) erroneously denied their Schedule C Cost of Goods Sold for 1997, (3) incorrectly calculated their interest income, and (4) erroneously imposed upon them pen-

alties for their failure to file tax returns. Def.'s Ex. 4. The parties ultimately reached an agreement regarding the 1997 and 1998 tax years on May 6, 2003, the date on which the Tax Court entered a stipulated final decision.[3] Def.'s Ex. 5.

According to each IRS Certificate of Assessments, Payments and Other Specified Matters ("Certificate of Assessments and Payments") for plaintiff's tax years 1999, 2000, and 2001, plaintiff did not file a tax return for those years. Def.'s Exs. 6–8. On April 21, 2003, the IRS generated a substitute return for plaintiff's 1999 and 2000 tax years. *See* Def.'s Ex. 6 at 28 (1999 tax year); Def.'s Ex. 7 at 34 (2000 tax year). On March 1, 2004, the IRS assessed a tax of $16,207.00 for tax year 1999, Def.'s Ex. 6 at 28, and assessed a tax of $41,165.00 for tax year 2000, Def.'s Ex. 7 at 34. The IRS also generated a substitute return for plaintiff's 2001 tax year on November 3, 2003, and assessed a tax of $35,293.00 on August 2, 2004. Def.'s Ex. 8 at 38.

The IRS issued an Intent to Levy Collection Due Process Notice to plaintiff for the 1997–2001 tax years on November 27, 2006. *See* Def.'s Ex. 1 at 3; Def.'s Ex. 6 at 29; Def.'s Ex. 7 at 35; Def.'s Ex. 8 at 39. On April 9, 2007, the IRS issued a Notice of Levy on Wages, Salary, and Other Income ("Notice of Levy") against plaintiff's wages to his employer, Microchip Technology. Compl. ¶ 2; Def.'s Mot. 5; Compl. Ex. A. The Notice of Levy was signed by IRS Revenue Officer J. Jones and indicated that the levy, which applied to unpaid assessments for and statutory additions to tax years 1997 through 2001, totaled $211,842.68. Compl. Ex. A. On or about May 15, 2007, Microchip Technology began making payments to the IRS by garnishing plaintiff's wages. Def.'s Mot. 5; Def.'s Ex. 1 at 3.

1. The facts are derived from the complaint ("Compl.") and accompanying exhibits ("Compl.Ex."); defendant's motion to dismiss and exhibits appended thereto ("Def.'s Ex."); and a declaration of defendant's counsel, G. Robson Stewart ("Stewart Decl."), accompanying defendant's motion to dismiss.

2. Although plaintiff filed a joint tax return with his wife for the 1997 and 1998 tax years, only plaintiff is named in the complaint. Moreover,

Mrs. Buser had no involvement in actions related to plaintiff's 1999, 2000, and 2001 tax years, which are discussed below.

3. As part of the parties' agreement, the IRS assessed plaintiff and his wife an additional $6,247.00 in tax and $1,359.00 in penalties for 2007, Def.'s Ex. 5 at 25; Def.'s Ex. 1 at 3, and an additional $1,414.00 in tax for 2008, Def.'s Ex. 5 at 25; Def.'s Ex. 2 at 9.

Plaintiff alleges that by June 29, 2008, the IRS had collected $32,133.18 from his 2007 and 2008 Microchip Technology paychecks. Compl. Prayer for Relief; Compl. Ex. F. The IRS applied these payments to satisfy the assessments for plaintiff's 1997 and 1998 tax years. *See* Def.'s Ex. 1 at 7 (indicating no outstanding balance for the 1997 tax year); Def.'s Ex. 2 at 13 (indicating no outstanding balance for the 1998 tax year). As of September 5, 2008, plaintiff had partially satisfied his assessment for 1999 and had an outstanding balance of $15,831.21. Def.'s Ex. 6 at 32. According to defendant, no payments have been applied toward plaintiff's 2000 and 2001 tax years, Def.'s Mot. 6, which had, as of September 5, 2008, outstanding balances due of $72,042.81 and $58,780.86, respectively, *see* Def.'s Ex. 7 at 36 (indicating the balance for the 2000 tax year); Def.'s Ex. 8 at 40 (indicating the balance for the 2001 tax year). Plaintiff has not filed a claim for refund for tax years 1999, 2000, or 2001. Def.'s Mot. 6; Stewart Decl. ¶ 4.

On May 2, 2007, plaintiff sent a letter to Microchip Technology in which he alleged that IRS Revenue Officer J. Jones lacked the delegated authority to send the Notice of Levy. Compl. Ex. B at 1; *see also id.* at 2 (containing plaintiff's affidavit stating that IRS Revenue Officer J. Jones (1) "was never authorized by the Secretary of the Treasury ... to send out such a notice," (2) "will not be able to produce a Delegation Order from the Secretary of the Treasury ... authorizing him to seize property in payment of income taxes," (3) "does not have an 'enforcement pocket commission,'" and (4) "has no authority to seek to collect the income taxes I allegedly owe BY FORCE"). According to plaintiff, IRS Revenue Officer J. Jones is a

"rogue agent" who has "commit[ted] the felonies [sic] act of fraudulent conversion." Compl. Ex. D at 4. Plaintiff cautioned his employer:

> Remember, a notice of levy is not a court order and Microchip Technology, Incorporated will respond to it at its own legal peril. You will be liable to me for breach of contract if you turn over my funds to someone who never had any legal authority to compel payment in this manner.

Compl. Ex. B at 1. Plaintiff alleges that his employer "responded by stating that they do not get involved in these matters even though they did[,] in fact[,] garnish my wages...." Compl. ¶ 1.

On or about January 9, 2008, plaintiff sent a letter to IRS Revenue Officer J. Jones, Compl. Ex. C, "informing him of the problems with the Notice of Levy," Compl. ¶ 3. Plaintiff, invoking the Freedom of Information Act ("FOIA"), requested the proof of authority relied upon by IRS Revenue Officer J. Jones to send the Notice of Levy, including "a photo copy of your badge and Employee ID; the date you took your Oath of Office, the name of the person administering the Oath, and a copy of that Oath," as well as "the law Mr. J[.] Jones used to make his determination of the tax liability." Compl. Ex. C at 2. Plaintiff also asserted that the "administrative determination of status for me is incorrect in several ways," *id.,* and included an "affidavit of status" with his letter,[4] Compl. Ex. D. Plaintiff received no response from the IRS to his January 9, 2008 letter. Compl. ¶ 3.

On August 18, 2008, plaintiff filed a *pro se* complaint in the United States Court of Federal Claims ("Court of Federal Claims") al-

---

4. In his "affidavit of status," plaintiff states that his classification by the IRS as a "taxpayer" constitutes "a means to violate My Constitutional Rights." Compl. Ex. D at 1. Plaintiff claims that he is not, among other things, a "U.S. taxpayer," a "U.S. legal person," a "UNITED STATES CITIZEN," and an "owner of a social security number," *id.* at 1–2, and that he is, among other things, a "human being," a "natural person," a "sovereign," and a "'follower of the Savior' and thusly [sic] am prohibited by my religious beliefs and the Holy scriptures from being involved with 'income taxes,'" *id.* at 2; *cf.* Compl. 3 (indicating that plaintiff was "[a]s-

signed a social security number"). Additionally, plaintiff declares that he conducts his business, self, and life "privately and outside the jurisdiction and scope of THE INTERNAL REVENUE SERVICE." Compl. Ex. D at 2. Finally, plaintiff claims, among other things, that he is

> not a person, I am a natural person known also as a human being and have only been considered a person by THE INTERNAL REVENUE SERVICE due to their purposeful and fraudulent act of misstating my status in their **administrative determination of status** as a means of terrorizing me into cooperation....

*Id.* at 4.

leging that the Notice of Levy issued by the IRS to Microchip Technology was both deficient, *id.* ¶ 2 (alleging that the Notice of Levy "did not have a valid [Office of Management and Budget ('OMB') ] number on the form), and unlawful",[5] *id.* ¶¶ 2–3. Additionally, plaintiff alleges, IRS Form 1040 "violates the federal Paperwork Reduction Act ... and is therefore a legally invalid form." *Id.* ¶ 5. According to plaintiff, IRS Form 1040 "falls into the 'bootleg' class if it does not display a valid OMB control number." *Id.* Furthermore, plaintiff asserts, "[i]t would be unlawful for THE INTERNAL REVENUE and/or THE INTERNAL REVENUE SERVICE to penalize me for any actions performed or not by myself pertaining to the 1040 form." *Id.*

Plaintiff seeks a refund of $32,133.18, which reflects the total amount of his wages that the IRS garnished in 2007 and 2008. Compl. Prayer for Relief; *see also* Compl. Ex. F (containing plaintiff's December 28, 2007 and June 27, 2008 payroll statements, which reflect the amounts garnished). In addition, plaintiff requests a stay of garnishment during the course of his litigation. Compl. Prayer for Relief.

## II. APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff submitted an application to proceed *in forma pauperis* with his complaint. Pursuant to 28 U.S.C. § 1915 (2006), courts of the United States are authorized to waive filing fees or security under certain circumstances.[6] The statute provides, in relevant part:

5. According to plaintiff, this "controversy involves alleged federal income tax liabilities for calendar years 1999, 2000 and 2001 [and that an affidavit included with exhibits appended to his complaint] applies to each of those years as well as 1997 and 1998." Compl. Ex. E.

6. While the Court of Federal Claims is not considered a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny an application to proceed *in forma pauperis*. *See* 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of section 1915); *see also Matthews v. United States*, 72 Fed.Cl. 274, 277–78 (2006)

Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Subsection (b), which addresses requirements for prisoners bringing a civil action or filing an appeal, is not applicable here.[7] *See* Application Proceed *In Forma Pauperis* 2 (indicating that plaintiff is not a prisoner). Plaintiff states that "because of [his] poverty, [he is] unable to pay" filing fees. *Id.* at 1. In support of his application, plaintiff indicates that his last date of employment was July 4, 2008, that he is not presently employed, *id.*, and that his only valuable property constitutes an automobile that he estimates is worth $1,500.00, *id.* at 2. Based upon plaintiff's representations, the court grants his application to proceed *in forma pauperis* and proceeds to the merit of the complaint.

## III. LEGAL STANDARDS

### A. *Pro Se* Plaintiff

The Court of Federal Claims holds pleadings of a *pro se* plaintiff to less stringent standards than litigants represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts have "strained [their] proper role in adver-

(recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia,* the court to adjudicate applications to proceed *in forma pauperis* pursuant to section 1915).

7. The court notes that section 1915(a)(1) utilizes both the terms "person" and "prisoner," 28 U.S.C. § 1915(a)(1), which "raises the issue of whether it applies to both prisoners and non-prisoners," *Hayes v. United States*, 71 Fed.Cl. 366, 366 (2006). This court has previously held that "the right to petition a federal court to proceed *in forma pauperis* applies to both prisoners and non-prisoners." *Id.* at 367.

sary proceedings to the limit, searching ... to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States,* 75 Fed. Cl. 249, 253 (2007); *see also Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."); *Bernard v. United States,* 59 Fed.Cl. 497, 499 (noting that *pro se* plaintiffs are not excused from satisfying jurisdictional requirements), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004). As the court explained in *Demes v. United States,* "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

### B. Standard of Review

#### 1. Motion to Dismiss—RCFC 12(b)(1)

■ Subject matter jurisdiction, which is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case," *Matthews,* 72 Fed.Cl. at 278, may be challenged at any time by the parties, by the court *sua sponte,* or on appeal, *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004). When considering an RCFC 12(b)(1) motion, the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The court "consider[s] the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988); *see also Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (recognizing the court's obligation to "assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor"); *cf. Betz v. United States,* 40 Fed.Cl. 286, 290 (1998) (noting that the court is not required to accept plaintiff's

framing of the complaint and that it should "look to plaintiff's factual allegations to ascertain the true nature of the claims").

■ A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence, *Reynolds,* 846 F.2d at 748, and needs only set forth a *prima facie* showing of jurisdictional facts to survive a motion to dismiss, *Raymark Indus., Inc. v. United States,* 15 Cl.Ct. 334, 338 (1988). Where a defendant or the court challenges jurisdiction, "the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction." [8] *Murphy v. United States,* 69 Fed.Cl. 593, 600 (2006). The court may consider matters outside the pleadings when examining jurisdiction. *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583–84 (Fed.Cir.1993); *see also Reynolds,* 846 F.2d at 748 ("If a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute."). If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. *Matthews,* 72 Fed.Cl. at 278; *see also* RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

#### 2. Motion to Dismiss—RCFC 12(b)(6)

Am RCFC 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The United States Supreme Court ("Supreme Court") recently clarified the standard with respect to the degree of specificity with which a plaintiff must plead facts sufficient to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

---

8. As noted above, plaintiff did not respond to defendant's motion to dismiss. Therefore, plaintiff has not brought forth any proof that would establish jurisdiction in this court.

recitation of the elements of a cause of action will not do." *Id.* at 1964–65 (citation & quotation marks omitted). Further, the Supreme Court indicated that while a complaint does not need to contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[9] *Id.* (citation & footnote omitted). Thus, in reviewing an RCFC 12(b)(6) motion, the court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed.Cir.2006) (citations & quotation marks omitted). Additionally, the court must decide " 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

### C. The Tucker Act

■ The Court of Federal Claims is a court of limited jurisdiction. *Jentoft v. United States,* 450 F.3d 1342, 1349 (Fed.Cir.2006) (citing *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The scope of this court's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity. *King,* 395 U.S. at 4, 89 S.Ct. 1501. In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." *Fid. Constr. Co. v. United States,* 700 F.2d 1379, 1387 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *King,* 395 U.S. at 4, 89 S.Ct. 1501. Unless Congress consents to a cause of action against the

United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *United States v. Sherwood,* 312 U.S. 584, 587–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

■ The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it " 'itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.' " *Greenlee County, Ariz. v. United States,* 487 F.3d 871, 875 (Fed.Cir.2007) (quoting *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005)). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1554 (Fed.Cir.1994) (en banc). "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989) (citations omitted), *aff'd,* 904 F.2d 45, 1990 WL 60708 (Fed.Cir. 1990); *see also United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (stating that a "grant of a right of action must be made with specificity").

The Court of Federal Claims "may not entertain claims outside this specific jurisdictional authority." *Adams v. United States,* 20 Cl.Ct. 132, 135 (1990). With the exception of limited situations not relevant in this case,

9. In so holding, the Supreme Court determined that the "no set of facts" language set forth in

*Conley,* 355 U.S. at 45, 78 S.Ct. 99, "has earned its retirement." *Bell Atl.,* 127 S.Ct. at 1969.

*see* 28 U.S.C. § 1491(a)(2), (b)(2), the Court of Federal Claims lacks jurisdiction to award declaratory or injunctive relief. *Bowen v. Massachusetts,* 487 U.S. 879, 905 & n. 40, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *accord Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997) ("The Tucker Act does not provide independent jurisdiction over ... claims for equitable relief."). Moreover, subject to limited exceptions, federal courts are prohibited from awarding declaratory or injunctive relief by the Anti–Injunction Act. *See* 26 U.S.C. § 7421(a) (2006) ("[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person...."). Specifically, section 7421(a) "provides that once a tax has been assessed, a taxpayer is powerless to prevent the [IRS] from collecting that tax." *Stiles v. United States,* 47 Fed.Cl. 1, 2 (2000).

### D. Tax Refund Claims

It is "undisputed" that the Court of Federal Claims possesses the authority to adjudicate tax refund claims. *CNG Transmission Mgmt. VEBA v. United States,* 84 Fed.Cl. 327, 328 (2008); *accord Radioshack Corp. v. United States,* 82 Fed.Cl. 155, 158 (2008); *see also Artuso v. United States,* 80 Fed.Cl. 336, 338 (2008) ("A tax refund claim, with very few exceptions, is the only type of tax dispute over which this court has jurisdiction." [10]). "A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims." *United States v. Clintwood Elkhorn Mining Co.,* —— U.S. ——, 128 S.Ct. 1511, 1514, 170 L.Ed.2d 392 (2008); *accord* 28 U.S.C. § 1346(a)(1). Section 1346 of title 28 of the United States Code provides, in relevant part:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected....

28 U.S.C. § 1346(a)(1). In order for the court to assert jurisdiction over such a claim, however, a plaintiff must satisfy the requirements set forth in the IRC. The IRC establishes a "scheme [that] provides that a claim for a refund must be filed with the [IRS] before suit can be brought, and establishes strict timeframes for filing such a claim." *Clintwood Elkhorn Mining Co.,* 128 S.Ct. at 1514.

▇▇▇ In *Flora v. United States,* the Supreme Court limited the court's tax refund suit jurisdiction to include only those claims in which the taxpayer fully paid all taxes assessed for the tax year at issue prior to the initiation of the claim. 357 U.S. 63, 72–73, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958) ("*Flora I*"), *aff'd* on reh'g, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) ("*Flora II*"). The Court's interpretation of the legislative history of section 1346(a)(1) yielded a conclusion that Congress intended no change to the requirement that full payment must be made before instituting suit. *Flora I,* 357 U.S. at 72–73, 78 S.Ct. 1079; *accord Flora II,* 362 U.S. at 155, 80 S.Ct. 630 (determining that the language set forth in 28 U.S.C. § 1346(a)(1) "reflects an understanding that full payment of the tax was a prerequisite to suit"). The United States Court of Claims, the predecessor court to the United States Court of Appeals for the Federal Circuit, "consistently applied the full payment rule with regard to the principal tax deficiency. Where the principal tax deficiency has not been paid in full, such tax refund claims are dismissed...." *Shore v. United States,* 9

---

10. The Court of Federal Claims possesses jurisdiction over other types of tax-related claims. For example, the court may entertain declaratory judgment actions pursuant to 28 U.S.C. § 1507, which concerns classification of entities pursuant to 26 U.S.C. § 501(c)(3) and other related provisions of the Internal Revenue Code ("IRC"). Additionally, the court has jurisdiction under 28 U.S.C. § 1508 to hear cases concerning certain partnership proceedings under 26 U.S.C. §§ 6226, 6228(a). *See Artuso,* 80 Fed.Cl. at 338 n. 1; *Skillo v. United States,* 68 Fed.Cl. 734, 740 n. 11 (2005). Furthermore, the United States Court of Claims, in *Brown & Williamson, Ltd. v. United States,* asserted jurisdiction to allow interest on a tax refund pursuant to a tax treaty that created a right to the retroactive refund of taxes. 231 Ct.Cl. 413, 688 F.2d 747, 752 (1982).

F.3d 1524, 1526 (Fed.Cir.1993) (citing *To-nasket v. United States*, 590 F.2d 343, 1978 WL 23853 (Ct.Cl.1978)); *accord Rocovich v. United States*, 933 F.2d 991, 993–94 (Fed.Cir. 1991). As the *Artuso* court explained, "[a] refund suit is exactly what the descriptive term implies." 80 Fed.Cl. at 338. Thus, "payment of the assessed taxes in full is a prerequisite to bringing a refund claim." *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed.Cir.2002); *accord Artuso*, 80 Fed.Cl. at 338 (citing *Tonasket* and explaining that the full payment rule requires that "a plaintiff must have fully paid the tax, penalties, and interest at issue").

In addition to satisfying the full payment rule, a plaintiff must also have filed a claim for a refund with the IRS for the amount of the tax at issue in compliance with 26 U.S.C. § 7422(a). *Artuso*, 80 Fed.Cl. at 338. Section 7422(a), which waives the federal government's sovereign immunity from tax refund suits, *Chi. Milwaukee Corp. v. United States*, 40 F.3d 373, 375 (Fed.Cir.1994), provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). By requiring that the plaintiff first file a refund claim with the IRS that complies with IRS regulations, section 7422(a) creates a jurisdictional prerequisite to filing a refund suit. *Chi. Milwaukee Corp.*, 40 F.3d at 374 (citing *Burlington N., Inc. v. United States*, 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982)).

In order to be "duly filed" under section 7422, a claim must comply with the timing requirement set forth in 26 U.S.C. § 6511(a). Section 6511(a) provides:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

26 U.S.C. § 6511(a). In *United States v. Dalm*, the Supreme Court emphasized that "unless a claim for refund of a tax has been filed within the time limits imposed by [section] 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' may not be maintained in any court." 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (citing *United States v. Kales*, 314 U.S. 186, 193, 62 S.Ct. 214, 86 L.Ed. 132 (1941)) (citation omitted).

Recently, the Supreme Court, in *Clint-wood Elkhorn Mining Co.*, analyzed the plain language of sections 7422(a) and 6511(a). With respect to section 7422(a), the Supreme Court noted that the provision contains "[f]ive 'any's' in one sentence," which it indicated "seem[s] that Congress meant the statute to have expansive reach." 128 S.Ct. at 1516. Thus, where a party failed to file a refund claim with the IRS, the Supreme Court reasoned that the "outcome ... is clear given the language of the pertinent statutory provisions." *Id.* The Supreme Court described section 6511(a) as "set[ting] forth in an 'unusually emphatic form'" the time limitations for filing administrative refund claims. *Id.* (quoting *United States v. Brockamp*, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997)). The language contained in section 6511(a), the Supreme Court concluded, "clearly state[s] that taxpayers must comply with the [IRC's] refund scheme before bringing suit, including the requirement to file a timely administrative claim." *Id.*

## IV. DISCUSSION

### A. The Court Cannot Adjudicate Plaintiff's Claims Related to the 1997 and 1998 Tax Years

#### 1. Lack of Subject Matter Jurisdiction

[12] Plaintiff seeks a refund of amounts paid pursuant to the Notice of Levy that

were applied to his liabilities for the 1997 and 1998 tax years. However, the court lacks subject matter jurisdiction to entertain these claims. Pursuant to section 6512(a) of title 26 of the United States Code,

> [i]f the Secretary has mailed to the taxpayer a notice of deficiency under section 6212(a) ... and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a) ..., no credit or refund of income tax for the same taxable year ... with respect to any act (or failure to act) to which such petition relates, in respect of which the Secretary has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court. . . .

26 U.S.C. § 6512(a); *cf. id.* § 6512(a)(1)-(6) (enumerating exceptions to the jurisdictional bar). Section 6512 "prevents a taxpayer from instituting any action in 'any court' after litigating that year in Tax Court." *Solitron Devices, Inc. v. United States*, 16 Cl.Ct. 561, 567 (1989); *accord Johnson v. United States*, 70 Fed.Cl. 296, 298 n. 6 (2006) (stating that 26 U.S.C. § 6512(a) "provides that once a timely petition to contest a notice of deficiency is filed with the Tax Court, the taxpayer may not institute a recovery in any other court"). This provision enumerates three criteria that "trigger the bar to jurisdiction." *Estate of Akin v. United States*, 31 Fed.Cl. 89, 98 (1994). First, the IRS must issue a notice of deficiency to the taxpayer. Second, the taxpayer must file a petition with the Tax Court concerning that deficiency. Third, none of the statutory exceptions may apply to the taxpayer's refund claim.

Here, all three criteria are satisfied. First, the IRS issued a Notice of Deficiency to plaintiff for the 1997 and 1998 tax years on November 21, 2001. Def.'s Ex. 3. Second, plaintiff, on March 4, 2002, filed a petition with the Tax Court challenging the Notice of Deficiency. Def.'s Ex. 4. Third, plaintiff has not alleged that any of the exceptions set forth in section 6512(a) apply. Thus, the Tax Court possesses exclusive jurisdiction over

all claims related to plaintiff's 1997 and 1998 tax years, *see Erickson v. United States*, 159 Ct.Cl. 202, 309 F.2d 760, 767 (1962) ("[T]he Tax Court's jurisdiction, once it attaches, extends to the entire subject of the correct tax for the particular year."), and plaintiff, "by filing a refund suit in the Court of Federal Claims for the [1997 and 1998] tax year[s], ... ignored the jurisdictional bar of section 6512(a), which was automatically invoked when [he] filed a petition in the Tax Court," *Estate of Akin*, 31 Fed.Cl. at 98. Since the final decision of the Tax Court precludes relitigation of the same claims in the Court of Federal Claims, *Stephanatos v. United States*, 81 Fed.Cl. 440, 443 (2008), *aff'd*, No.2008–5091, 2009 WL 27481 (Fed.Cir. Jan.6, 2009), the court dismisses plaintiff's claims for lack of subject matter jurisdiction.

## 2. Res Judicata[11]

 Defendant argues that "to the extent that plaintiff seeks to relitigate the issues involved in the Tax Court action over 1997 and 1998, the Stipulated Final Decision of the Tax Court bars such reconsideration under the doctrine of res judicata." Def.'s Mot. 8. The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In order to prevail on a claim of res judicata, the party asserting the bar must prove that: (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *accord Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir.2000).

 Defendant satisfies the requirements necessary to successfully invoke the affirmative defense of res judicata. First, the parties in this action—plaintiff and the government—are identical to those in the

---

11. Although the jurisdictional issue is dispositive, *see supra* Part IV.A.1, and the court need not reach defendant's res judicata argument, *Prati v.* *United States*, 81 Fed.Cl. 422, 429 n. 14 (2008), the court nevertheless addresses defendant's res judicata defense in the alternative.

proceedings before the Tax Court. *See* Def.'s Ex. 5. Second, the Tax Court issued a stipulated final decision based on the merits of that case. *See id.* Third, the underlying facts of plaintiff's Tax Court claim, namely the circumstances surrounding his 1997 and 1998 tax years, are identical to those presented here. The Tax Court's May 6, 2003 final decision precludes relitigation of plaintiff's claims related to the 1997 and 1998 tax years. Accordingly, in the alternative, plaintiff's 1997 and 1998 tax year claims are dismissed for failure to state a claim upon which relief may be granted.

## B. The Court Lacks Jurisdiction Over Plaintiff's Claims Related to the 1999, 2000, and 2001 Tax Years

### 1. Full Payment Rule

■ To the extent that plaintiff's complaint seeks a refund of amounts that were collected pursuant to the Notice of Levy and were applied thereafter to his tax liabilities for years 1999, 2000, and 2001, the court lacks jurisdiction to entertain these claims. As previously noted, plaintiff has not fully paid his outstanding tax liability for tax years 1999, 2000, and 2001. *See, e.g.,* Def.'s Ex. 6–8 (containing Certificate of Assessments and Payments for plaintiff's 1999, 2000, and 2001 tax years indicating that no payment had been made). A Certificate of Assessments and Payments "is routinely used to prove that a tax assessment has in fact been made." *Rocovich,* 933 F.2d at 994. Where, as here, a plaintiff has failed to allege that he paid the full amount of the assessed taxes that are the basis of his refund claim, the court may accept as true the assertions contained in a Certificate of Assessments and Payments indicating that the plaintiff has not fully paid the assessment. *Daniels v. United States,* No. 97–442T, 1999 WL 302450, at *3 (Fed.Cl. Apr.14, 1999); *see also United States v. Chila,* 871 F.2d 1015, 1018 (11th Cir.1989) (recognizing that a Certificate of Assess-

ments and Payments is " 'presumptive proof of a valid assessment' " (quoting *United States v. Dixon,* 672 F.Supp. 503, 506 (M.D.Ala.1987), *aff'd,* 849 F.2d 1478 (11th Cir.1988))); *Dallin ex rel. Estate of Young v. United States,* 62 Fed.Cl. 589, 601 (2004) (stating that a Certificate of Assessments and Payments is "generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made").[12] "In a tax refund case, there is a strong presumption of the correctness of the findings of the Commissioner of Internal Revenue." *Dallin ex rel. Estate of Young,* 62 Fed.Cl. at 599. As such, "[p]roof of the assessment establishes a prima facie case and shifts the burden of going forward to the taxpayer." *Adams v. United States,* 175 Ct.Cl. 288, 358 F.2d 986, 994 (1966).

■ Full payment is a prerequisite to asserting a tax refund claim in the Court of Federal Claims. *See Shore,* 9 F.3d at 1527 (stating that the full payment rule "requires that taxpayers prepay the tax principal before the Court of Federal Claims will have subject matter jurisdiction over [a] tax refund action under [section] 1491"); *supra* Part III.D. Plaintiff has failed to allege that he fully paid his tax assessments for years 1999, 2000, and 2001. Indeed, plaintiff's claims that he is not subject to income taxation, *see, e.g.,* Compl. ¶ 4 (referencing an affidavit executed by plaintiff that "concern[s] my status and relationship to internal revenue laws of the United States" and alleging that the IRS has violated his "inalienable rights"); Compl. Ex. D at 2 (declaring that plaintiff is prohibited by his religious beliefs from paying income taxes); *id.* at 3 ("The government is outside of its jurisdiction when taxing me[.]"); *id.* at 4 ("THE INTERNAL REVENUE SERVICE has no authority to collect from natural persons and human beings who are[,] by definition[,] outside of the scope and jurisdiction of THE INTERNAL

---

12. Although decisions of the regional circuit courts of appeal are not binding on the court, they are persuasive authority. *CNG Transmission Mgmt. VEBA,* 84 Fed.Cl. at 336–37. While the court is not bound by other decisions in the Court of Federal Claims, *Reidell v. United States,* 47 Fed.Cl. 209, 212 (2000) ("A decision here is

not binding on other judges in this same court."), "prudence, comity and the need for consistent application of the laws suggest that a judge should follow the rulings of another judge of the same court absent strong reason to the contrary," *Greenberg v. United States,* 1 Cl.Ct. 406, 407 (1983).

REVENUE SERVICE.”); *id.* at 5 (asserting that the IRS is conspiring against plaintiff to “violate [his] human and Constitutional rights” by collecting taxes from him); Compl. Ex. E at 3 (claiming that the IRS has “never affirmatively established IRS standing and venue jurisdiction in Arizona on the record with documentary or testimonial evidence” and stating that plaintiff was “not now and never [has] been a citizen or resident of the geographical United States), further support the fact that he has not satisfied any jurisdictional prerequisites. To the extent that plaintiff seeks a refund of payments that were levied against him and applied to tax year 1999, plaintiff's claim must fail because he has not satisfied the full payment rule for tax year 1999”. *Cf. Shore,* 9 F.3d at 1527–28 (noting that the full payment rule does not apply to interest or penalties unless they are separately challenged). Accordingly, the court lacks jurisdiction over plaintiff's claims related to tax years 1999, 2000, and 2001.

### 2. Failure to File Refund Claims

Furthermore, the court cannot entertain plaintiff's claims related to tax years 1999, 2000, and 2001 because plaintiff failed to file refund claims with the IRS. As previously discussed, the taxpayer must, in addition to paying a tax liability in full, file a claim for refund with the IRS prior to commencing a suit challenging an IRS assessment of additional taxes. *See* 26 U.S.C. § 7422(a); *Chi. Milwaukee Corp.,* 40 F.3d at 374 (noting that section 7422(a) creates a jurisdictional prerequisite to filing a refund suit). Plaintiff has not alleged that he filed any refund claim for tax years 1999, 2000, and 2001. Moreover, plaintiff's allegations cannot be construed to constitute an informal refund claim. *See Stelco*

*Holding Co. v. United States,* 42 Fed.Cl. 101, 109 (1998) (“Courts have long applied the *informal* claim doctrine in order to exercise jurisdiction over cases in which the taxpayer's formal administrative claim for refund is untimely filed, where the facts and circumstances transpiring prior to the expiration of the statute of limitations, viewed in their totality, demonstrate that the Commissioner was given timely and adequate informal notice that the taxpayer sought a refund of taxes overpaid.”). One “indispensable element of an informal claim for refund is a ‘written component.’ ” *Id.* (quoting *Arch Eng'g Co. v. United States,* 783 F.2d 190, 192 (Fed.Cir.1986)). The written component should “ ‘adequately apprise the [IRS] that a refund is sought and for certain years.’ ” *Id.* (quoting *Am. Radiator & Standard Sanitary Corp. v. United States,* 162 Ct.Cl. 106, 318 F.2d 915, 920 (1963)).

The court cannot construe plaintiff's January 9, 2008 letter to IRS Revenue Officer J. Jones as the written component of an informal claim. First, plaintiff's letter, which primarily concerns his FOIA request and his alleged “status,” does not request a refund of taxes paid. *See* Compl. Ex. C. Second, plaintiff's letter does not reference any particular tax year with specificity that would place the IRS on notice that plaintiff sought a refund. *See id.* Third, plaintiff includes no language that can be construed as a request for refund. *See id.* Instead, plaintiff suggests that he “would pay any tax that [he was] liable for.” *Id.* at 2.

Finally, the court notes that plaintiff has not complied with the requirements set forth in the RCFC for pleading a claim for a tax refund.[13] Because plaintiff has not demon-

---

13. Former RCFC 9(h)(6) requires that a party furnish specific documentation when filing a tax refund claim. After defendant filed its motion to dismiss, the Court of Federal Claims amended the language of the RCFC “to conform to the general restyling” of the Federal Rules of Civil Procedure. RCFC 9, Rules Committee Note (Nov. 3, 2008). Most of the revisions to the RCFC were minor textual changes. However, RCFC 9(h)(6), which specifically pertained to special matters applicable to tax refund suits, was redesignated RCFC 9(m) and was amended as follows:

(m) **Tax Refund Claim.** In pleading a claim for a tax refund, a party must include:
(1) a copy of the claim for refund, and
(2) a statement identifying:
(A) the tax year(s) for which a refund is sought;
(B) the amount, date, and place of each payment to be refunded;
(C) the date and place the return was filed, if any;
(D) the name, address, and identification number (under seal) of the taxpayer(s) appearing on the return;

strated that he timely filed any refund claim in compliance with the IRC, the court lacks jurisdiction to entertain plaintiff's claims for tax years 1999, 2000, and 2001.

## C. The Court Lacks Jurisdiction to Entertain Plaintiff's Wrongful Levy Claim

■ To the extent that plaintiff challenges the validity of the levy, the court lacks subject matter jurisdiction to entertain his wrongful levy claim. Section 7426(a) of the IRC provides, in part:

(1) **Wrongful levy.** If a levy has been made on property or property has been sold pursuant to a levy, *any person (other than the person against whom is assessed the tax out of which such levy arose)* who claims an interest in or lien on such property and that such property was wrongful-

ly levied upon may bring a civil action against the United States in a district court of the United States.[14]

26 U.S.C. § 7426(a)(1) (footnote & emphasis added). Section 7426 explicitly contemplates that a third party initiate a wrongful levy action against the government. *Id.; see also EC Term of Years Trust*, 127 S.Ct. at 1767. Plaintiff, however, is not a third party and, as such, is not "within the class of plaintiffs entitled to recover under the statute...." *Greenlee County, Ariz.*, 487 F.3d at 876.

## D. The Court Lacks Jurisdiction to Provide Injunctive Relief

■ Plaintiff, as noted above, requests a stay of garnishment during the course of this litigation. Compl. Prayer for Relief. The court can only award equitable relief that is

(E) the date and place the claim for refund was filed; and
(F) the identification number (under seal) of each plaintiff, if different from the identification number of the taxpayer.

RCFC 9(m). As the rules committee note indicates, an additional requirement—that taxpayer identification numbers be included under seal—was added to the rule. RCFC 9, Rules Committee Note (Nov. 3, 2008). Plaintiff has, for the reasons discussed throughout Part IV, failed to satisfy the requirements of the former rule.

14. The court notes that 26 U.S.C. § 6532(c) imposes a nine-month statute of limitations on wrongful levy claims. *See Gordon v. United States*, 227 Ct.Cl. 328, 649 F.2d 837, 844 (1981) ("We construe I.R.C. § 6532(c) to implicitly require levy contests under the Tucker Act to be brought within 9 months of levy."). Defendant suggests that the holding in *Gordon* has been called into question by *EC Term of Years Trust v. United States*, which affirmed a decision by the United States Court of Appeals for the Fifth Circuit holding that "when [section] 7426 is available to an individual, then it is his sole and exclusive remedy", 434 F.3d 807, 810 (5th Cir. 2006), *aff'd*, 550 U.S. 429, 127 S.Ct. 1763, 167 L.Ed.2d 729 (2007). *See* Def.'s Mot. 12 & n. 6.

In *EC Term of Years Trust*, the Supreme Court held that a wrongful levy action was the exclusive remedy for a third party whose property had been levied. 127 S.Ct. at 1765. There, the IRS imposed a levy upon the property of a trust in order to collect taxes owed by another. *Id.* at 1766. The trust initiated a wrongful levy action pursuant to section 7426(a)(1), but it missed the statutory filing deadline. *Id.* at 1766–67. The Supreme Court addressed whether the trust could challenge the levy through a tax refund claim filed pursuant to 28 U.S.C. § 1346(a)(1),

*see generally id.*, which provides that the district courts and the Court of Federal Claims shall have original, concurrent jurisdiction over actions "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," 28 U.S.C. § 1346(a)(1). Holding that the trust could not do so, the Supreme Court reasoned that " 'a precisely drawn, detailed statute pre-empts more general remedies.' " 127 S.Ct. at 1767 (quoting *Grown v. GSA*, 425 U.S. 820, 834, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). It noted that Congress "specifically tailored [section] 7426(a)(1) to third party claims of wrongful levy, and if third parties could avail themselves of the general tax refund jurisdiction of [section] 1346(a)(1), they could effortlessly evade the levy statute's 9–month limitations period...." *Id.; accord id.* at 1768 ("We simply cannot reconcile the 9–month limitations period for a wrongful levy claim under [section] 7426(a)(1) with the notion that the same challenge would be open under [section] 1346(a)(1) for up to four years.").

The court, however, need not reach the issue of *Gordon's* continued viability and whether the Court of Federal Claims would be precluded from maintaining jurisdiction under the Tucker Act following the Supreme Court's decision in *EC Term of Years Trust*. *See Cherbanaeff v. United States*, 77 Fed.Cl. 490, 495 n. 7 (2007) (noting that "the continued viability of the holding[ ] in ... *Gordon* to the effect that this court has jurisdiction over wrongful levy claims is uncertain based on the ... Supreme Court's recent holding" in *EC Term of Years Trust*). As section 7426 makes clear, wrongful levy actions are limited to third parties to recover funds levied to satisfy others' tax liabilities, 26 U.S.C. § 7426(a)(1); *EC Term of Years Trust*, 127 S.Ct. at 1765, and plaintiff cannot invoke it in an effort to seek recovery for himself.

"incidental to and collateral to a claim for money damages." *Bobula v. U.S. Dep't of Justice,* 970 F.2d 854, 858–59 (Fed.Cir.1992); *accord Simanonok v. Simanonok,* 918 F.2d 947, 952 (Fed.Cir.1990) (stating that claims for injunctive relief are "not cognizable in a ... Tucker Act case, absent a concurrent colorable claim for monetary recovery" (citing *Richardson v. Morris,* 409 U.S. 464, 465–66, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) (per curiam))). Although plaintiff seeks monetary relief, the court lacks subject matter jurisdiction over plaintiff's complaint, which does not assert a cognizable tax refund claim. Thus, plaintiff's request for injunctive relief cannot be incidental or collateral to a claim for money damages. Moreover, to the extent that plaintiff also seeks to enjoin continued enforcement of the levy against him, such a request must be dismissed for the reasons discussed in Part III.C, *supra.*

### E. Plaintiff's Remaining Claims Are Frivolous

The court, having determined that it lacks jurisdiction over the complaint, need not reach plaintiff's remaining claims—that (1) IRS Form 1040 violates the Paperwork Reduction Act; (2) the Notice of Levy was procedurally deficient; and (3) he is not subject to federal income taxation—since they merely offer additional support for plaintiff's failure to satisfy the necessary prerequisites for asserting jurisdiction over his tax refund claims in the Court of Federal Claims. Typically, frivolous claims are dismissed for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). *See Lewis v. United States,* 70 F.3d 597, 602–03 (Fed.Cir.1995) (discussing dismissals for want of jurisdiction and for failure to state a claim and noting that the usual course is to dismiss frivolous claims for failure to state a claim, which is a final adjudication on the merits). However, "the Supreme Court has not overturned the line of cases countenancing the dismissal of frivolous claims on jurisdictional grounds" so long as "jurisdictional dismissals for frivolousness [are] 'confin[ed]' to cases 'that are very plain.'" *Id.* at 603–04 (quoting *Hart v. B.F. Keith Vaudeville Exch.,* 262 U.S. 271, 274, 43 S.Ct. 540, 67 L.Ed. 977 (1923) (second alteration in origi-

nal)); *see also Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (noting that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim ... is wholly insubstantial and frivolous"). As explained below, plaintiff's arguments are wholly frivolous and without merit.

First, Congress enacted the Paperwork Reduction Act of 1980 ("PRA"), 44 U.S.C. §§ 3501–3520 (2006), in order to limit, as much as practical, information requests by federal agencies that burden the public. *See Dole v. United Steelworkers of Am.,* 494 U.S. 26, 32, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990) (stating that the PRA "was enacted in response to one of the less auspicious aspects of the enormous growth of our federal bureaucracy: its seemingly insatiable appetite for data"). The PRA does not apply to "'information collection request' forms issued during an investigation against an individual to determine his ... tax liability." *Lonsdale v. United States,* 919 F.2d 1440, 1445 (10th Cir.1990). Indeed, as the United States Court of Appeals for the Tenth Circuit determined in *Lonsdale,* the PRA "provides no basis for avoiding ... levies imposed on [a taxpayer's] wages...." *Id.; see also United States v. Neff,* 954 F.2d 698, 699 (11th Cir. 1992) ("Congress did not enact the PRA's public protection provision to allow [the] OMB to abrogate any duty imposed by Congress. So the PRA provides [appellant] no refuge from his statutorily-imposed duty to file income tax returns."). Furthermore, courts have previously rejected arguments similar to plaintiff's concerning IRS Form 1040 and valid OMB control numbers. *See, e.g., Lewis v. Comm'r,* 523 F.3d 1272, 1274–77 (10th Cir.2008) (rejecting arguments that IRS Form 1040(1) did not comply with the PRA, (2) did not display a valid control number, (3) must contain an expiration date, and (4) must include a disclaimer indicating that PRA requirements are satisfied); *United States v. Lawrence,* 217 Fed.Appx. 553, 554 (7th Cir.2007) (rejecting arguments that IRS Form 1040 did not contain a valid OMB number and therefore ran afoul of the PRA); *Salberg v. United States,* 969 F.2d 379, 384 (7th Cir.1992) (affirming the district court's

determination that an IRS Form 1040 without an OMB control number expiration date does not violate the PRA).

■ Second, the IRS is authorized by statute to issue a notice of levy. Section 6331 provides, in part:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property . . . belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

26 U.S.C. § 6331(a); *see also id.* § 6331(d)(4) (enumerating information that must be included with a notice of levy). Although plaintiff argues that the Notice of Levy was deficient because it "did not have a valid OMB number on the form[,] . . . did not have a court stamp or . . . complete signature," Compl. ¶ 1, neither section 6331 nor its implementing regulations require this information, *see* 26 U.S.C. § 6331; 26 C.F.R. §§ 301.6331–1,–2 (2006). Moreover, courts have rejected such arguments. *See, e.g., Tavano v. Comm'r*, 986 F.2d 1389, 1389 (11th Cir.1993) (holding that a notice of tax deficiency sent to a taxpayer by the IRS need not be signed in order to be valid).[15] Furthermore, section 6331(a) explicitly applies to "any person liable to pay any tax," 26 U.S.C. § 6331(a), despite plaintiff's claims to the contrary, *see* Compl. Ex. D at 2 (declaring that plaintiff is "NOT . . . 'one of the entities listed in Title 26 section 6331(a)' ").

■ Third, despite plaintiff's creative arguments to the contrary, he cannot disclaim his responsibility to pay federal income tax. The Fourteenth Amendment to the United States Constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV § 1. Plaintiff himself concedes that he is a citizen of Arizona, "which is a State of the Union," Compl. Ex. E at 1,

though he claims that he is not a "citizen or resident of the geographical United States," *id.* at 3; *see also* Compl. Ex. D at 1 (stating that plaintiff is not a United States citizen). The court, pursuant to Rule 201 of the Federal Rules of Evidence, takes judicial notice of the fact that the state of Arizona, which was admitted to the union as the forty-eighth state in 1912, is one of the fifty states that comprise the United States of America. *See* America's Story from America's Library, "Arizona," at http://www.americaslibrary.gov (last visited January 9, 2009); *Am. Heritage College Dictionary* 77 (4th ed.2004) (defining "Arizona" as a "state in the SW U.S. on the Mexican border; admitted as the 48th state in 1912"). Plaintiff's position is nonsensical and therefore untenable.

Furthermore, although plaintiff maintains that "I am not a person," Compl. Ex. D at 4, the IRC defines a "person" to include *"an individual,* a trust, estate, partnership, association, company or corporation," 26 U.S.C. § 7701(a)(1) (emphasis added). Along these same lines, plaintiff asserts that he is not a "taxpayer." Compl. Ex. D at 1. The IRC defines a "taxpayer" as "any person subject to any internal revenue tax." 26 U.S.C. § 7701(a)(14). Courts have previously deemed similar arguments to those raised by plaintiff here as frivolous. *See, e.g., United States v. Sloan,* 939 F.2d 499, 500–01 (7th Cir.1991) (rejecting similar arguments, which the court characterized as "strange"); *Stoecklin v. Comm'r,* 865 F.2d 1221, 1224 (11th Cir.1989) (characterizing arguments that appellant "is not subject to the income tax laws" as "frivolous"); *Stubbs v. Comm'r,* 797 F.2d 936, 938 (11th Cir.1986) (per curiam) (characterizing arguments that appellant was not a person required to file a tax return as "patently frivolous"); *United States v. Studley,* 783 F.2d 934, 937 & n. 3 (9th Cir.1986) ("[Appellant] contends that she is not a 'taxpayer' because she is an absolute, freeborn and natural individual. This argument is frivolous. And individual is a 'person' under the [IRC]...."); *Guthrie v. Comm'r,* No. 14009–04, 2006 WL 1027727, at *1 (U.S.Tax Ct. Apr. 19, 2006) (characterizing

---

**15.** A notice of deficiency is similar to a notice of levy. *See United States v. Arford,* Civ. Nos. 90–

0427–S–MJC, 89–1070–S–MJC, 1993 WL 120365, at *1–2 (D.Idaho Jan.6, 1993).

petitioner's arguments that he "is not subject to Federal income tax," that "requiring him to pay income tax violates the U.S. Constitution," and that "he is not liable for income tax because he is Catholic" as frivolous).[16]

In short, "[t]axes are what we pay for civilized society," *Compania General de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100, 48 S.Ct. 100, 72 L.Ed. 177 (1927) (Holmes, J., dissenting), and "[a]ll individuals, natural or unnatural, must pay federal income tax on their wages," *Lovell v. United States*, 755 F.2d 517, 519 (7th Cir.1984). Plaintiff's arguments are frivolous and, in fact, confirm that the court lacks jurisdiction over the complaint.

## V. CONCLUSION

For the reasons stated above, the court lacks jurisdiction over plaintiff's complaint. Accordingly, it is hereby ordered:

1. Plaintiff's application to proceed *in forma pauperis* is **GRANTED.**

2. Defendant's motion to dismiss the complaint is **GRANTED.** The Clerk of Court is directed to dismiss plaintiff's complaint **WITHOUT PREJUDICE** and to enter judgment accordingly.

3. Plaintiff's request for a stay of garnishment is **DENIED.**

NO COSTS.

---

**16.** While decisions of the Tax Court are not binding, the Court of Federal Claims "will follow these decisions if the underlying rationale is persuasive." *Southland Royalty Co. v. United States*, 22 Cl.Ct. 525, 530 n. 15 (1991) (discussing the Tax Court's persuasive authority as it relates to

---

United States Claims Court, the direct predecessor of the Court of Federal Claims); *accord Travelers Ins. Co. v. United States*, 25 Cl.Ct. 141, 145 (1992) (deeming decisions of the Tax Court persuasive authority).