David TOON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 10–366 C.

United States Court of Federal Claims.

Dec. 20, 2010.

---

David Toon, Phoenix, AZ, pro se.

Christopher A. Bowen, United States Department of Justice, Washington, DC, for defendant. Thomas P. Bruder, Defense Finance and Accounting Service, Indianapolis, IN, of counsel.

### OPINION AND ORDER

SWEENEY, Judge.

Before the court are plaintiff's application to proceed *in forma pauperis,* plaintiff's motion for immediate preliminary injunction, defendant's motion to dismiss, and defendant's motion for judgment upon the administrative record. In this case, plaintiff, a veteran of the United States Army ("Army") and the Arizona Army National Guard ("National Guard"), filed a *pro se* complaint alleging that his retirement pay was unlawfully garnished by the Defense Finance and Accounting Service ("DFAS"). He requests that the court enjoin the DFAS from recouping portions of his special separation benefit ("SSB") and seeks reimbursement of the amounts withheld by the DFAS. Defendant moves to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant also moves, pursuant to RCFC 52.1, for judgment upon the administrative record "to the extent that [the] complaint could be construed as alleging that the [DFAS] improperly calculated the military pay benefits it is entitled to recoup...." Def.'s Mot. Dismiss & Def.'s Mot. J. Administrative R. 1.[1] For the reasons set forth below, plaintiff's application to proceed *in forma pauperis* is denied, plaintiff's motion is denied, and defendant's motion to dismiss is granted. Alternatively, the court holds that, to the extent the complaint can be read as raising an issue related to the proper amount of the SSB plaintiff received, defendant is entitled to judgment upon the administrative record.

### I. BACKGROUND[2]

Plaintiff voluntarily separated from active duty in the Army on October 28, 1993, while holding the rank of first lieutenant. Compl. ¶ 1; Def.'s Ex. 2 at 1; AR 21. At the time of his separation, plaintiff was offered an SSB of approximately $45,000 from the DFAS. Compl. Ex. at 2; AR 21. The orders assigning plaintiff for separation processing advised him that

> [s]oldiers who receive [Voluntary Separation Incentive ("VSI")]/SSB based on service in the Armed Forces, and who subsequently qualify under 10 USC or 14 USC for retired or retainer pay shall have deducted an amount equal to the total amount of VSI/SSB pay not previously recouped. This amount will be recouped from each payment of retired or retainer pay until the total amount deducted is equal to the total amount of VSI/SSB received.

Def.'s Ex. 2 at 1. On May 1, 1996, plaintiff joined the National Guard at the rank of first lieutenant. Compl. ¶ 4. He retired from the National Guard at the rank of major on February 28, 2006. *Id.* ¶¶ 4–5. Upon his separation from the National Guard, plaintiff began receiving retirement pay of approximately $2,900 per month. *Id.* ¶ 5.

In both April 2009 and May 2009, the DFAS deducted $1,562.71 from plaintiff's monthly retirement payments as part of its recoupment program. *Id.* ¶ 6; Pl.'s Mot. Ex. at 1. According to plaintiff, each deduction was made "without proper notice or verification of sums possibly owed." Compl. ¶ 6. On May 22, 2009, plaintiff received a letter from the DFAS advising him that its

---

1. The court notes that plaintiff did not respond to defendant's motion to dismiss or its motion for judgment upon the administrative record. Plaintiff also did not file a reply brief in support of his motion. Although the court afforded plaintiff ample opportunity to file response and reply briefs, he did not do so, and the court determines that, given plaintiff's silence, there is no reason to delay its ruling.

2. The facts are derived from the complaint ("Compl.") and an exhibit appended thereto ("Compl. Ex."), an exhibit accompanying plaintiff's motion ("Pl.'s Mot. Ex."), exhibits appended to defendant's opposition to plaintiff's motion ("Def.'s Ex."), and the administrative record ("AR").

records show that earlier in your military career you received one of the following payments: [SSB]....

The Department of Defense is undertaking a formal review of the policy and legal considerations relative to the recoupment actions for SSB ... [p]ayments. This review will determine what options, if any, are available in addressing these recoupment actions and determine the most appropriate manner in which the Department of Defense can meet its statutory responsibilities. As a part of this formal review, DFAS is temporarily suspending SSB ... recoupment for retirees in an active pay status....

When this review is completed, DFAS will notify you in writing as to when the recoupment action will resume....

Def.'s Ex. 3 at 8. Thereafter, plaintiff made numerous requests to the DFAS for verification of the amount owed, Compl. ¶ 9, and copies of his Leave and Earning Statement ("LES") from specific time periods. Compl. Ex. at 2–11. He alleges that the DFAS had "no record[ ] for the period of time in question available in order to support [its] claim and to execute a garnishment." Compl. ¶ 10.

In an April 26, 2010 letter to plaintiff, the DFAS explained that the April 2009 and May 2009 deductions from plaintiff's retirement pay were necessary because "Federal law prohibits military members from receiving both separation and retirement payment for the same period of service...." Pl.'s Mot. Ex. at 1. It noted that, beginning in June 2009, the DFAS temporarily suspended recouping retirement payment during the pendency of the United States Department of Defense review. *Id.* Indicating that the review process was complete, the DFAS advised plaintiff that recoupments totaling $1,308.80 per month would resume in August 2010. *Id.* The DFAS also advised plaintiff that he could request a reduction in the monthly recoupment amount by completing a financial hardship application. *Id.* at 2.

Plaintiff submitted a financial hardship application to the DFAS on May 4, 2010. Def.'s Ex. 4 at 9–15. While his application was pending before the DFAS, plaintiff, on June 14, 2010, filed a *pro se* complaint in the United States Court of Federal Claims ("Court of Federal Claims") in which he alleges that the DFAS's garnishments of his retirement pay were illegal and unjust. Compl. ¶ 11. On July 12, 2010, plaintiff filed a motion for immediate preliminary injunction seeking to "prevent any recoupment efforts in this matter until the matter is legally resolved." Pl.'s Mot. Immediate Prelim. Inj. 1. The DFAS notified plaintiff on July 20, 2010, that his financial hardship application was approved and that, commencing with its August 2, 2010 payment to plaintiff, it would begin withholding $232.93 per month, a monthly recoupment rate of 7.1189 percent.[3] AR 20.

In his complaint, plaintiff requests that the court: (1) issue an immediate cease and desist order on any and all garnishment proceedings; (2) order defendant to produce (i) certified documents indicating amounts "allegedly remitted to Plaintiff," and (ii) LES copies that support any claim against him; (3) refer this case to arbitration; (4) order that "any alleged amounts secured by the Internal Revenue Service [ ("IRS") ] be recouped" from the IRS; (5) order the DFAS to repay approximately $3,000 withheld from plaintiff's retirement pay plus interest; and (6) award plaintiff costs and fees. Compl. Prayer for Relief ¶¶ 1–7.

## II. APPLICATION TO PROCEED *IN FORMA PAUPERIS*

■ Plaintiff filed an application to proceed *in forma pauperis.* Pursuant to 28 U.S.C. § 1915, courts of the United States are authorized to waive filing fees or security under certain circumstances.[4] The statute provides, in relevant part:

---

3. Previously, the DFAS applied a monthly recoupment rate of forty percent. AR 20.

4. While the Court of Federal Claims is not usually considered a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny an application to proceed *in forma pauperis. See* 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of section 1915); *see also Matthews v. United States,* 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enact-

Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1) (2006). Subsection (b), which addresses requirements for prisoners bringing a civil action or filing an appeal, is not applicable here.[5] *See* Pl.'s Applic. Proceed *In Forma Pauperis* 2 (indicating that plaintiff is not a prisoner). Plaintiff states that "because of [his] poverty, [he is] unable to pay" filing fees. *Id.* at 1. Although plaintiff represents that he is currently unemployed, has a minimal amount of savings, and must provide for his wife, plaintiff's application is incomplete: he acknowledges the receipt of monies from "other sources" within the past twelve months but does not describe these sources and the amounts received, as required. Indeed, plaintiff omits from his application information about the retirement pay he currently receives. Because the court is unable to determine plaintiff's financial status, it must deny his application to proceed *in forma pauperis*.

## III. LEGAL STANDARDS

### A. *Pro Se* Plaintiffs

 The Court of Federal Claims holds pleadings of a *pro se* plaintiff to less stringent standards than litigants represented by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching . . . to see if plaintiff has a cause of action

somewhere displayed." *Ruderer v. United States,* 412 F.2d 1285, 1292 (Ct.Cl.1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007); *see also Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir. 1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."); *Bernard v. United States,* 59 Fed.Cl. 497, 499 (noting that *pro se* plaintiffs are not excused from satisfying jurisdictional requirements), *aff'd,* 98 Fed.Appx. 860 (Fed. Cir.2004). As the Court of Federal Claims stated in *Demes v. United States,* "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

### B. Subject Matter Jurisdiction

 Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Matthews,* 72 Fed.Cl. at 278 (stating that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the court's subject matter jurisdiction at any time. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

---

ed the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia,* the court to adjudicate applications to proceed *in forma pauperis* pursuant to section 1915).

**5.** The court notes that section 1915(a)(1) utilizes both the terms "person" and "prisoner," which

"raises the issue of whether it applies to both prisoners and non-prisoners." *Hayes v. United States,* 71 Fed.Cl. 366, 366 (2006). This court has previously held that "the right to petition a federal court to proceed *in forma pauperis* applies to both prisoners and non-prisoners." *Id.* at 367.

■ The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

■ Tucker Act jurisdiction is based upon actions involving the following: (1) contracts with the United States; (2) illegal exactions of money by the United States; and (3) money-mandating constitutional provisions, statutes, regulations, or executive orders. *See United States v. Mitchell*, 463 U.S. 206, 212–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Because the Tucker Act "is merely jurisdictional, ... grant of a right of action must be made with specificity." *Id.* at 400, 96 S.Ct. 948. As the United States Court of Appeals for the Federal Circuit ("Federal Circuit") explained,

> [i]n determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits.

*Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed.Cir.2008); *see also Ralston Steel Corp. v. United States*, 340 F.2d 663, 667–68 (Ct.Cl.1965) (holding that "a claimant who says he is entitled to money from the United States because a statute or a regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous, but arguable").

## C. Standards of Review

### 1. Motion to Dismiss

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction under RCFC 12(b)(1). Alternatively, it moves to dismiss the complaint for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). When deciding a motion to dismiss based upon either ground, the court assumes all factual allegations are true and draws all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed.Cir.2006).

■ The court's "general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999). When considering an RCFC 12(b)(1) motion, the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). If the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction. *See McNutt*, 298 U.S. at 189, 56 S.Ct. 780. When ruling upon a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds*, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. *Matthews*, 72 Fed.Cl. at 278; *see also* RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

An RCFC 12(b)(6) motion tests the sufficiency of a complaint. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also RhinoCorps Ltd. Co. v. United States,* 87 Fed.Cl. 481, 492 (2009) ("A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced."). The purpose of RCFC 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,* 988 F.2d 1157, 1160 (Fed.Cir.1993) (citing *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). When considering an RCFC 12(b)(6) motion, the court "must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." *Chapman Law Firm Co. v. Greenleaf Constr. Co.,* 490 F.3d 934, 938 (Fed.Cir.2007) (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). A failure to allege a cause of action upon which relief can be granted warrants a judgment on the merits rather than a dismissal for want of jurisdiction. *Litecubes, LLC v. N. Light Prods., Inc.,* 523 F.3d 1353, 1361 (Fed.Cir.2008).

The United States Supreme Court ("Supreme Court") clarified the degree of specificity with which a plaintiff must plead facts sufficient to survive a Rule 12(b)(6) motion in *Bell Atlantic Corp.,* stating that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S.Ct. 1955 (citation & quotation marks omitted). While a complaint need not contain "detailed" factual allegations, those "[f]actual allegations must be enough to raise a right to relief above the speculative level...." [6] *Id.* In other words, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp.,* 550 U.S. at 556, 127 S.Ct. 1955). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 556, 127 S.Ct. 1955); *see also id.* (stating that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing *Bell Atl. Corp.,* 550 U.S. at 555, 127 S.Ct. 1955)). Neither allegations "that are 'merely consistent with' a defendant's liability," *id.* (quoting *Bell Atl. Corp.,* 550 U.S. at 557, 127 S.Ct. 1955), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are sufficient, *id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555, 127 S.Ct. 1955).

Courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record" when deciding a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). However, materials appearing in the record of the case may also be taken into account without converting a motion to dismiss into one for summary judgment. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004). *But cf.* RCFC 12(d) ("If, on a motion under RCFC 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56."). Courts have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion" and rely upon that material. 5C Wright & Miller, *supra,* § 1366. Such discretion generally is exercised when the proffered material is "likely to facilitate the disposition of the action." *Id.*

---

**6.** In so holding, the Supreme Court determined that the "no set of facts" language set forth in *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "earned its retirement." *Bell Atl. Corp.,* 550 U.S. at 563, 127 S.Ct. 1955.

## 2. Motion for Judgment Upon the Administrative Record

 Defendant also moves for judgment upon the administrative record to the extent that the complaint challenges the proper amount of the SSB plaintiff received. RCFC 52.1 provides that, "[w]hen proceedings before an agency are relevant to a decision in a case, the administrative record of those proceedings must be certified by the agency and filed with the court." A motion for judgment upon the administrative record "requires the Court to review an administrative decision to determine whether it is supported by an already-existing administrative record." *Greene v. United States*, 65 Fed.Cl. 375, 382 (2005). The court reviews agency decisions to determine if they are arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed.Cir.2004) (citing *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983)).

 Judgment upon the administrative record is not akin to summary judgment. *Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1372 (Fed.Cir.2006). Rather, it "is properly understood as intending to provide for an expedited trial on the administrative record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed.Cir.2005).[7] Thus, in ruling on a motion for judgment upon the administrative record, the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. *Id.* at 1356–57. The court may make "factual

findings ... from the record evidence as if it were conducting a trial on the record." *Id.* at 1357.

## 3. Motion for Injunctive Relief

 Preliminary injunctive relief is an extraordinary and drastic remedy, *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam), and the decision to grant injunctive relief falls within the sound discretion of the trial court, *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993). As the Supreme Court acknowledged, a preliminary injunction is designed "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). In order to obtain a preliminary injunction, the moving party must demonstrate that: (1) it has a likelihood of success on the merits;[8] (2) it will suffer irreparable harm if preliminary relief is not granted; (3) the harm it will suffer outweighs the harm to the government and to third parties; and (4) the grant of relief is not contrary to the public interest. *Four Rivers Invs., Inc. v. United States*, 77 Fed.Cl. 592, 594–95 (2007); *accord FMC Corp.*, 3 F.3d at 427; *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952 (Fed. Cir.1990); *Hosp. Klean of Tex., Inc. v. United States*, 65 Fed.Cl. 618, 625 (2005). "No one factor, taken individually, is necessarily dispositive.... [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*,

7. The decision in *Bannum, Inc.* was based upon RCFC 56.1, which was abrogated and replaced by RCFC 52.1. RCFC 52. 1, however, was designed to incorporate the decision in *Bannum, Inc. See* RCFC 52. 1, Rules Committee Note (June 20, 2006).

8. Although "[t]here is some disagreement on the standard of proof required for injunctive relief," *see Career Training Concepts, Inc. v. United States*, 83 Fed.Cl. 215, 218 (2008), the Federal Circuit recently stated that "[n]o other court has held that when the [party seeking injunctive relief] has presented a 'substantial question' on its side of the dispute—that is, more than a scintilla but less than a preponderance of evidence in support of its side—no injunction *pendente lite* is available." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1364 (Fed.Cir.2008). The *Abbott Lab-*

*oratories* court emphasized that "the standard is the likelihood of success of the plaintiff at trial, with recognition of the presumptions and burdens." *Id.; see also id.* at 1365 ("The general criterion of likelihood of success on the merits, in the context of the equities of the particular case, are uniform throughout the regional circuits.... [A]ll refer to the likelihood of the eventual outcome, not whether a substantial question has been raised."), 1368 ("All of the circuits have placed the preliminary injunction in terms of the likelihood of success on the merits and equitable factors. No circuit has held that it suffices simply to raise a 'substantial question.' Raising a substantial question achieves the threshold required of the well-pleaded complaint; it does not demonstrate a likelihood of prevailing.").

3 F.3d at 427. Moreover, "equitable factors are of particular significance at the preliminary stage, where the question is whether to change the position of the parties during the litigation." *Abbott Labs.*, 544 F.3d at 1364.

## IV. DISCUSSION

### A. Plaintiff's Motion

 Plaintiff requests that the court issue an injunction preventing the DFAS from recouping the amount of his SSB.[9] The Court of Federal Claims lacks the ability to award general equitable relief.[10] *See Bowen v. Massachusetts*, 487 U.S. 879, 905, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (holding that the Court of Federal Claims lacks general jurisdiction to grant injunctive relief); *Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir.1997) (holding that the Tucker Act does not provide independent relief through declaratory judgments); *Stephanatos v. United States*, 81 Fed.Cl. 440, 445 (2008) (explaining that the court "has no authority to grant equitable relief 'unless it is tied and subordinate to a money judgment'" (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir.1998))). However, the Tucker Act authorizes the court to grant equitable relief under limited circumstances:

> [t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative

or executive body or official with such direction as it may deem proper and just. 28 U.S.C. § 1491(a)(2).

Plaintiff does not bring a claim that falls within the court's equitable powers under section 1491(a)(2). First, plaintiff does not seek an order, incident of and collateral to any money judgment, directing restoration to office or position, or placement in appropriate duty or retirement status. Second, plaintiff does not seek the correction of his military record because he acknowledges that he was the recipient of an SSB in 1993 in the amount of approximately $45,000. *See* Compl. ¶¶ 1–3; *see also* Compl. Ex. at 2 ("I am in need of my LES's from August 1993 to March 1994. In particular I am looking for the SSB amount of [$]45,000+ given[] and the tax amount recouped."). Consequently, the court lacks the authority to provide injunctive relief to plaintiff under 28 U.S.C. § 1491(a)(2).[11] Accordingly, plaintiff's motion is denied, and those portions of the complaint that seek equitable relief must be dismissed for lack of jurisdiction pursuant to RCFC 12(h)(3).

### B. Defendant's Motion to Dismiss

### 1. The Parties' Exhibits Are Not "Matters Outside the Pleadings" That Require Conversion of Defendant's Motion to Dismiss Into a Motion for Summary Judgment

 As previously noted, courts "have allowed consideration of matters incorporated by reference or integral to the claim...." 5B, Wright & Miller, *supra*, § 1357; *see also In re Syntex Corp. Secs. Litig.*, 95 F.3d 922, 926 (9th Cir.1996) ("When deciding a motion to dismiss, a court may consider the complaint and 'documents whose contents are

---

9. Plaintiff also seeks court-ordered arbitration. This court has no authority to direct the parties to engage in settlement negotiations or to participate in arbitration.

10. The court may award equitable relief for nonmonetary claims under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601–613 (2006). 28 U.S.C. § 1491(a)(2); *accord Alliant Techsys., Inc. v. United States*, 178 F.3d 1260, 1268–70 (Fed.Cir.1999). It may also, as part of its bid protest jurisdiction, "award any relief that the court considers proper, including declaratory

and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). As explained below, CDA-related equitable relief is not applicable in this case. Additionally, because this case is not a bid protest, section 1491(b)(2) has no application here.

11. Even if the court had the authority to award injunctive relief, plaintiff cannot, as discussed below, demonstrate that he is likely to succeed on the merits.

alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994))). "Where a complaint refers to a document but does not incorporate it, a party may submit a copy of the document to support or oppose a motion to dismiss as long as the document is 'central' to the complaint." *P.D. v. Mt. Vernon Cmty. Sch. Corp.*, No. 1:07–CV–1048–DFH–JMS, 2008 WL 1701877, at *1 (S.D.Ind. Apr. 10, 2008). Here, the exhibits submitted by the parties clarify, rather than add anything new to, the allegations in the complaint. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir.1993) (rejecting an argument that materials were outside the pleadings on a Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") motion where the documents "did nothing more than verify the complaint" and "added nothing new, but, in effect, reiterated the contents of the complaint itself"). Moreover, these materials fall within the "narrowly defined category of materials a court can consider without converting a[n FRCP] 12(b)(6) motion to one for summary judgment. This category includes exhibits attached to the complaint, undisputed documents relied upon by the plaintiff, other items appearing in the record of the case, and matters of public record." *Stuler v. United States*, No. 07–642, 2008 WL 957009, at *2 (W.D.Pa. Apr. 8, 2008) (citation omitted). Accordingly, the court's consideration of these materials does not require conversion of defendant's motion to dismiss into one for summary judgment.

### 2. The Court Lacks Jurisdiction Over Plaintiff's Purported Contract Claim

The Tucker Act waives sovereign immunity to allow jurisdiction over claims founded upon either "express or implied" contracts with the United States.[12] 28 U.S.C. § 1491(a)(1). The Court of Federal Claims possesses jurisdiction over claims brought under the CDA, *id.* § 1491(a)(2), which also constitutes a waiver of sovereign immunity. *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1370 (Fed.Cir.2009). In order to invoke jurisdiction based upon an express or implied-in-fact contract, plaintiff must allege all the requisite elements of a contract with the United States, *see Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed.Cir.1998) (quoting *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997)); *Peninsula Group Capital Corp. v. United States*, 93 Fed.Cl. 720, 731 (2010) (indicating that an implied-in-fact contract "requires the existence of the same elements as an express contract"), which consist of "a mutual intent to contract including offer, acceptance, and consideration," *Total Med. Mgmt., Inc. v. United States*, 104 F.3d 1314, 1319 (Fed.Cir.1997). "A contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Trauma Serv. Group*, 104 F.3d at 1325. Thus, "[a]nyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have

---

12. With regard to implied contracts, a distinction must be made between an implied contractual relationship in law or in fact. An agreement implied in law "is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'" *Hercules Inc. v. United States*, 516 U.S. 417, 424, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (quoting *Balt. & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816 (1923)); *see also Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed.Cir.2007) (explaining that an implied-in-law contract is one "in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice"). The Tucker Act "does not reach claims based on contracts implied in law...." *Mitchell*, 463 U.S. at 218, 103 S.Ct. 2961; *see also Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law."). Thus, the Tucker Act only extends to an implied-in-fact contract, which is "an agreement ... founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Balt. & Ohio R.R. Co.*, 261 U.S. at 597, 43 S.Ct. 425.

been unaware of the limitations on their authority." *Id.* Furthermore, a CDA claim "requires a crucial element," *viz.*, an express or implied-in-fact contract "between a *contractor* and the government." *Res. Recycling Corp. v. United States,* 56 Fed.Cl. 612, 616 (2003).

■■■ Plaintiff asserts that the Court of Federal Claims possesses jurisdiction over "government contract cases." Compl. 1. Although plaintiff is correct that the court possesses jurisdiction over contract claims, plaintiff fails to allege such a claim here. Plaintiff does not allege the existence of any express or implied-in-fact contract between him and the United States. He also does not allege facts demonstrating the existence of any elements required for contract formation. Furthermore, "[u]nder the CDA, this Court's jurisdiction is predicated upon a *contractor* meeting two fundamental requirements: (1) the submission of a written claim to the contracting officer and (2) the agency's issuance of a final decision." *OK's Cascade Co. v. United States,* 87 Fed.Cl. 739, 745 (2009) (emphasis added). Plaintiff does not allege that he is a contractor such that his claim might be construed under the CDA.

Pursuant to RCFC 9(k), a party pleading a claim founded on a contract "must identify the substantive provisions of the contract ... on which the party relies." Plaintiff has not done so here. Indeed, principles of contract law do not apply in this case. As the Supreme Court explained, "common-law rules governing private contracts have no place in the area of military pay. A solider's entitlement to pay is dependent upon a statutory right." *Bell v. United States* 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *see also United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) (stating that the "rights of the affected service members must be determined by reference to ... statutes and regulations ..., rather than to ordinary contract principles"). Thus, "[p]ensions, compensation allowances, and privileges are gratuities. They involve no agreement of the parties; and grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of

Congress." *Lynch v. United States,* 292 U.S. 571, 577, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *see also Kania v. United States,* 650 F.2d 264, 268 (Ct.Cl.1981) ("[I]t has long been held that the rights of ... military public employees against the government do not turn on contract doctrines ...." (citing *Shaw v. United States,* 640 F.2d 1254, 1260 (Ct.Cl. 1981))).

Plaintiff does not allege any requisite elements of a contract between him and the United States. *Harbert/Lummus Agrifuels Projects,* 142 F.3d at 1434; *Trauma Serv. Group,* 104 F.3d at 1325. As a result, the court lacks jurisdiction over plaintiff's contract claim. Accordingly, defendant's motion to dismiss plaintiff's purported contract claim pursuant to RCFC 12(b)(1) is granted.

### 3. Plaintiff Fails to State a Claim Based Upon a Money–Mandating Statute

■■■ Having determined that it lacks jurisdiction over plaintiff's purported contract claim, the court liberally construes the complaint to ascertain whether plaintiff states any cause of action. *See Ruderer,* 412 F.2d at 1292. Although plaintiff does not base a claim for reimbursement of his SSB upon any statute, the court notes that separation pay upon release from active duty is encompassed in 10 U.S.C. § 1174 (2006). Section 1174, which authorizes separation pay in specified cases, is a money-mandating statute. *Siemietkowski v. United States,* 86 Fed.Cl. 193, 197 (2009) (citing *Metz v. United States,* 466 F.3d 991, 998 (Fed.Cir.2006)). To the extent that plaintiff's claim implicates section 1174, the court possesses jurisdiction over plaintiff's statutory claim. Nevertheless, plaintiff fails to state a claim upon which relief can be granted.

■■■ Section 1174 governs separation pay upon involuntary discharge or release from active duty. A service member who receives

> separation pay under this section, or separation pay ... under any other provision of law, based on service in the armed forces, and who later qualifies for retired or retainer pay under this title or title 14 shall have deducted from each payment of such retired or retainer pay an amount, in

such schedule of monthly installments as the Secretary of Defense shall specify, taking into account the financial ability of the member to pay and avoiding the imposition of undue financial hardship on the member and member's dependents, until the total amount deducted is equal to the total amount of separation pay ... so paid.

10 U.S.C. § 1174(h)(1). SSB programs are set forth at 10 U.S.C. § 1174a.[13] When a service member receives an SSB but later qualifies for retirement pay, the government, pursuant to section 1174, deducts the portion attributable to the pre-SSB service until it has fully deducted the SSB amount. *Horn v. U.S. Def. Fin. & Accounting Serv.*, 48 Fed. Appx. 481 (5th Cir.2002) (table decision). "[T]he law prevents military retirees from collecting two retirements for the same period of service." *Id.*

The complaint alleges that the DFAS is not entitled to recover the amount of plaintiff's SSB. However, section 1174(h)(1) requires that "the total amount of separation pay" be deducted from each payment of retirement pay that a service member later receives. 10 U.S.C. § 1174(h)(1); *see also* 7A *Department of Defense Financial Management Regulation* ¶ 350703.A (2010) ("A deduction shall be made from a member who has received an SSB and later qualifies for retired or retainer pay. The deduction shall be a portion of such retired or retainer pay until an amount equal to the gross amount of such SSB has been deducted."); 7B *Department of Defense Financial Management Regulation* ¶ 040702 (2010) ("If a member

who has received an SSB payment later qualifies for retired or retainer pay under Titles 10 or 14 of the United States Code, the gross amount of SSB received as shown on the member's DD Form 214 ... shall be recouped at a monthly installment for each payment of such retired ... pay...."). Plaintiff does not dispute that he (1) received an SSB in 1993 in the amount of $45,052.61,[14] Compl. ¶¶ 1, 3; Compl. Ex. at 2; (2) subsequently joined the National Guard, Compl. ¶ 4; and (3) began drawing retirement pay upon at the conclusion of his service in the National Guard, *id.* ¶ 5. Pursuant to section 1174(h)(1), the DFAS began deducting "the total amount of separation pay" from plaintiff's retirement pay, which consists of the gross, rather than net, amount of the separation payment. *Palm v. United States*, 904 F.Supp. 1312, 1314–15 (M.D.Ala.1995) (construing a prior version of 10 U.S.C. § 1174(h) that mirrors current section 1174(h)(1), determining that "total recoupment without tax relief was clearly intended by Congress," and concluding that the plaintiff was not entitled to a refund for income taxes paid on an SSB payment she had received); 7A *Department of Defense Financial Management Regulation, supra,* ¶ 350703.A; 7B *Department of Defense Financial Management Regulation, supra,* ¶ 040702. Because the complaint sets forth facts that authorize the DFAS to recoup plaintiff's SSB from his retirement pay, plaintiff fails to state a statutory claim upon which relief can be granted. Accordingly, defendant's motion to dismiss plaintiff's stat-

---

**13.** In order to be eligible for voluntary separation under an SSB program, a service member must have not been approved for payment of a voluntary separation incentive, served on active duty or full-time National Guard duty for no less than six and no greater than twenty years, served at least five years of continuous active duty or full-time National Guard duty immediately preceding the date of the member's separation from active duty, and satisfied additional requirements as prescribed by the Secretary of Defense. 10 U.S.C. § 1174a(c)(1)–(5). In order to be separated under an SSB program, the service member must submit a request for separation prior to the expiration of the member's term of enlistment and comply with other statutory requirements. *Id.* § 1174a(f).

The VSI program is set forth at 10 U.S.C. § 1175. A service member may apply to partici-

pate in either the VSI or SSB program, but separation can only occur under one program. *Id.* §§ 1174a(e)(3), 1175(c).

**14.** Plaintiff's DD Form 214 suggests that he received an SSB payment of $43,296.17. AR 21. According to Jeffery J. Heiney, Chief, Systems Liaison and Procedures Division, Military Pay Operations Indianapolis, the amount of plaintiff's SSB payment listed on his DD Form 214 was calculated using the incorrect basic pay rate. *Id.* at 22 (Decl. Jeffery J. Heiney ("Heiney Decl.") ¶¶ 1, 3). The correct amount of the SSB payment, which was reflected on plaintiff's LES, was $45,052.61. *Id.* at 22–23 (Heiney Decl. ¶¶ 2–5); *see also* Compl. Ex. at 2 ("I am looking for the SSB amount of [$]45,000+ given....").

utory claim pursuant to RCFC 12(b)(6) is granted.

### C. Defendant's Motion for Judgment Upon the Administrative Record[15]

In its motion for judgment upon the administrative record, defendant argues that substantial evidence supports the DFAS's decision to recoup plaintiff's SSB in the amount of $45,052.61. To the extent that the complaint can be construed to challenge the amount of the SSB, see Compl. ¶¶ 6, 9, 10–11 (alleging that (1) garnishments were made without "verification of sums possibly owed," (2) the DFAS failed to produce documentation and had no records "to support [its] claim," and (3) "a garnishment without facts to support the claim is illegal and unjust"), defendant is entitled to judgment upon the administrative record. DFAS records indicate that plaintiff received an SSB of $45,052.61 in 1993. AR 1, 5, 9, 11. As previously explained, plaintiff's DD Form 214 indicated an SSB in the amount of $43,296.17. AR 21; supra note 14. However, Mr. Heiney indicated that $43,296.17 would have been plaintiff's SSB if he did not have prior years of enlisted experience before becoming an officer. AR 23 (Heiney Decl. ¶ 3). Because plaintiff did have enlisted experience prior to becoming an officer, plaintiff's correct classification entitled him to an SSB in the amount of $45,052.61. Id. (Heiney Decl. ¶¶ 3–4). Plaintiff ultimately received an SSB in the amount of $45,052.61. Id. at 1, 5, 9, 11, 22. Furthermore, plaintiff himself indicated, in correspondence with the DFAS in April 2009, that his SSB was approximately $45,000. Compl. Ex. at 2. The DFAS's decision to recoup $45,052.61, therefore, is supported by both evidence in the administrative record and plaintiff's personal recollection of the amount of his SSB. Accordingly, the court, in the alternative, that defendant's motion for judgment upon the administrative record is granted.

### V. CONCLUSION

For the reasons set forth above, it is hereby ordered:

1. Plaintiff's application to proceed in forma pauperis is **DENIED.**

2. Plaintiff motion for immediate preliminary injunction is **DENIED.**

3. Defendant's motion to dismiss is **GRANTED.** The Clerk of Court is directed to **DISMISS WITHOUT PREJUDICE** those portions of the complaint over which the court lacks jurisdiction and to **DISMISS WITH PREJUDICE** those portions of the complaint over which the court possesses jurisdiction.

4. Alternatively, to the extent that the complaint can be construed to challenge the amount of plaintiff's SSB, defendant's motion for judgment upon the administrative record is **GRANTED.**

The Clerk of Court is directed to enter judgment accordingly. No costs.

---

15. Having dismissed the complaint pursuant to RCFC 12(b), the court need not reach defendant's motion for judgment upon the administrative record. Nevertheless, the court addresses the issues raised by defendant as an alternative holding.