Scott R. **MARTIN**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

Nos. 11–260 T, 11–496 T, 11–756 T.

United States Court of Federal Claims.

Jan. 13, 2012.

Scott R. Martin, Reno, NV, pro se.

Michael J. Ronickher, with whom were John A. DiCicco, Principal Deputy Assistant Attorney General, Mary M. Abate, Acting Chief, and G. Robson Stewart, Assistant Chief, Tax Division, Court of Federal Claims Section, United States Department of Justice, Washington, DC, for defendant.

## OPINION and ORDER

HEWITT, Chief Judge.

Before the court is plaintiff's Complaint To Enforce The Liquidated Damages On The Default Of Implied Contract (plaintiff's Complaint or Compl.),[1] Docket Number (Dkt.

---

1. Plaintiff's Complaint consists of six pages of numbered paragraphs, followed by sixteen pages of attached documents and a two-page index to these documents. *See generally* Compl., Docket Number (Dkt. No.) 1. The attached documents are divided into two sections, "Section 1" and

No.) 1, filed by Scott R. Martin, pro se, on April 25, 2011; Plaintiff's Motion For Summary Judgment on the Liquidated Damages of Implied Contract Table of Authorities and Indexed Proof of Claim attached (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 12, filed July 18, 2011; Defendant's Motion to Dismiss, or, in the Alternative, Cross–Motion for Summary Judgment[,] Opposition to Plaintiff's Motion for Summary Judgment[,] and Brief in Support Thereof (defendant's Motion or Def.'s Mot.), Dkt. No. 18, filed August 31, 2011; Plaintiff's Response to: Defendant's Motion to Dismiss, or, In the Alternative, Cross–Motion for Summary Judgment, and Opposition To Plaintiff's Motion for Summary Judgment (Pl.'s Resp.), Dkt. No. 26, filed October 7, 2011; and Defendant's Reply in Support of Its Motion to Dismiss, or, in the Alternative, Cross–Motion for Summary Judgment, Dkt. No. 27, filed October 7, 2011.[2]

"Section 2," and are numbered pages 1 through 16 by plaintiff. *Id.* When citing to the first six pages of the Complaint, the court cites to the numbered paragraph(s), and, when citing to the attached documents, the court cites to the page number(s) and title of the cited document.

2. Also before the court are Plaintiff's Motion for Sanctions Regarding Defendant's Brief of 8/24/2011 (plaintiff's Motion for Sanctions or Pl.'s Mot. for Sanctions), Dkt. No. 29, filed October 27, 2011; Defendant's Opposition to Plaintiff's Motion for Sanctions (Def.'s Opp'n), Dkt. No. 30, filed November 14, 2011; and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Sanctions, Dkt. No. 31, filed November 22, 2011. Plaintiff's Motion for Sanctions, which was filed under Rule 11(c)(2) of Rules of the United States Court of Federal Claims (RCFC), includes a September 19, 2011 letter (September Letter or Sept. Letter) from plaintiff to defendant's counsel with a subject heading "Proposed Motion for Sanctions in the U.S. Court of Federal Claims, Case No. 11–260 T, Chief Judge Emily C. Hewitt." Sept. Letter 1. In the September Letter, plaintiff points to three passages in Defendant's Motion to Dismiss, or, in the Alternative, Cross–Motion for Summary Judgment; Opposition to Plaintiff's Motion for Summary Judgment; and Brief in Support Thereof (defendant's Motion or Def.'s Mot.), Dkt. No. 18, that, plaintiff alleges, are in violation of RCFC 11(b)(3). Sept. Letter 1–4.

Under RCFC 11(b)(3), an attorney certifies that "the factual contentions" contained in a pleading, written motion or other paper presented to the court, to the best of the attorney's knowledge, "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." RCFC 11(b)(3). RCFC 11(b)(2), which plaintiff also appears to rely on, states that an attorney certifies that "the claims, defenses, and other legal contentions" contained in a pleading, written motion or other paper presented to the court, to the best of the attorney's knowledge, "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." RCFC 11(b)(2). RCFC 11(c)(1) provides that if the court determines that any party has violated RCFC 11(b), the court may impose upon that party an appropriate sanction. RCFC 11(c)(1). For the reasons stated below, the court does not find cause to sanction defendant under RCFC 11(c)(1).

The first passage of defendant's Motion to Dismiss cited to by plaintiff, *see* Pl.'s Motion for Sanctions 2, begins: "Faced with a federal tax lien, plaintiff, rather than paying his unpaid tax liabilities, elected to make various demands of the IRS. . . ." Def.'s Mot. 6. Plaintiff's Motion for Sanctions cites to the remainder of the sentence: "which he imagines created an implied contract with the United States that now entitles him to the release of the lien, refund of all monies collected pursuant to the lien, and the payment to him of $5 million in liquidated damages." Sept. Letter 2 (internal quotation marks omitted). The court finds that defendant's characterization of plaintiff's position is "well within the bounds of the normal adversarial process," *see* Def.'s Opp'n 3, and is not sanctionable, *see* RCFC 11(c)(1).

The second passage cited by plaintiff states: "Plaintiff's complaints should be dismiss for failure to state a claim under RCFC 12(b)(6) because he fails to allege the existence of a valid contract and raises only frivolous arguments." Sept. Letter 3 (internal quotation marks omitted). As support for his claim that this passage is sanctionable, plaintiff cites to his Motion for Summary Judgment, which, according to plaintiff, "demonstrates the satisfaction of the elements of a valid contract and claim." *Id.* Plaintiff's disagreement with defendant's legal argument does not warrant the imposition of sanctions under RCFC 11(c)(1). The court finds that defendant's argument is "warranted by existing law." *See* RCFC 11(b)(2); *accord infra* Part III.A (finding that plaintiff has failed allege the existence of an implied contract and has therefore failed to state a claim upon which relief can be granted).

The third provision cited by plaintiff, which reads, "Finally, plaintiff has, in any event, made no allegation that an individual with authority to bind the Government took any action that would form a contract," Sept. Letter 4, fails to meet the requirements of either RCFC 11(b)(2) or RCFC 11(b)(3), *see* RCFC 11(b)(2)–(3); *accord infra* Part III.A (finding that plaintiff has not alleged that an Internal Revenue Service (IRS) agent

Also before the court are plaintiff's Complaints in Case No. 11–496 T (Second Complaint or 2d Compl.) and Case No. 11–756 T (Third Complaint or 3d Compl.). The court consolidated Case No. 11–496 T with the above-captioned case on August 3, 2011. Case No. 11–496 T, Order of Aug. 3, 2011, Dkt. No. 5. The court consolidated Case No. 11–756 T with the above-captioned case on December 21, 2011. Case No. 11–756 T, Order of Dec. 21, 2011, Dkt. No. 4. On January 9, 2012, defendant filed Defendant's Motion to Dismiss the Complaint in No. 11–756 T, Dkt. No. 32, "for the reasons set out in its August 24, 2011 [Motion to Dismiss]." [3] *Id.* at 2.

Plaintiff claims that the Internal Revenue Service (IRS or defendant) and plaintiff entered into an implied contract concerning a Notice of Federal Tax Lien (NOFTL) filed by the IRS against plaintiff. *See* Compl. ¶¶ 2, 6, 9. The terms of the implied contract are allegedly set forth in a letter sent by plaintiff to the IRS on February 18, 2011 (February Letter or Feb. Letter). *See id.* ¶¶ 2–3, 5.

Plaintiff claims that defendant breached the implied contract by refusing to pay plaintiff $4,250,000 under the terms of a liquidated damages provision alleged to be contained in the February Letter. *See* Pl.'s Mot. 2; Compl. ¶¶ 8–9, 12.

Plaintiff's Second and Third Complaints also stem from an alleged liquidated damages provision of the February Letter. Plaintiff claims that the provision imposes upon defendant a "consensual lien of $250,000.00 per

30 Day period" that the NOFTL against plaintiff "is allowed to remain in the Public record." Compl. 5; *see also* 2d Compl., Quarterly Invoice at 2 (demanding—as of July 1, 2011—$750,000 for three thirty-day periods beginning on May 1, 2011); 3d Compl., Quarterly Invoice at 2 (demanding— as of October 1, 2011—$750,000 for three thirty-day periods beginning on August 1, 2011).

Defendant responds that plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6) because plaintiff "fails to allege the existence of a valid contract and raises only frivolous arguments." Def.'s Mot. 7.[4]

To the extent that plaintiff's claim may be construed as a tax refund action or a wrongful levy action rather than as a contract action,[5] defendant contends that the court lacks jurisdiction to hear such claims under RCFC 12(b)(1). *Id.* at 11–13.

For the following reasons, the court DENIES plaintiff's Motion for Summary Judgment and GRANTS defendant's Motions to Dismiss. Because plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6), plaintiff's Complaints shall be DISMISSED.

## I. Background

Plaintiff contends that an agent of the IRS filed a NOFTL against plaintiff on August 16, 2010. Compl. ¶ 2. On February 18, 2011 plaintiff served upon defendant a letter that

---

with actual authority to bind the government entered into a contract with plaintiff). Plaintiff cites as support a February 18, 2011 letter (February Letter or Feb. Letter) and an April 1, 2011 letter (April Letter or Apr. Letter) sent by plaintiff to defendant, Sept. Letter 4–5, both of which are attached to plaintiff's Complaint, Compl. 1–5 (Feb. Letter), 10–13 (Apr. Letter); *cf. infra* Part I (discussing the February and April Letters). Neither the February Letter nor the April Letter provides any evidence that an authorized government agent entered into a contract with plaintiff.

Because the court finds that defendant has not violated RCFC 11(b), plaintiff's Motion for Sanctions is DENIED.

3. The court refers collectively to defendant's August 24, 2011 Motion and its January 9, 2012 Motion as "defendant's Motions to Dismiss."

4. Citations to defendant's Motion are to Defendant's Brief in Support of Defendant's Motion to Dismiss, or, in the Alternative, Cross–Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, which immediately follows defendant's two-page Motion to Dismiss, or, in the Alternative, Cross–Motion for Summary Judgment, and Opposition to Plaintiff's Motion for Summary Judgment.

5. In the court's view, plaintiff does not argue that his claim is a tax refund action or a wrongful levy action. However, because defendant raises these arguments in its Motion, *see* Def.'s Mot. 11–13, the court addresses these arguments in Part III.B below. Given the fact that plaintiff does not himself put forward these claims, the court does not consider whether transfer is appropriate under 28 U.S.C. § 1631 (2006).

"[c]onditionally [a]ccepted" the NOFTL upon defendant's "proof of claim." *Id.* at 1–2 (Feb. Letter); *see also id.* ¶¶ 2, 3(c). The February Letter contains "[a] request for clarification regarding [the] IRS['s] authority for its actions in this matter," *id.* ¶ 3(d); *see also id.* at 2–3 (Feb. Letter), and a demand that the IRS respond within thirty days, *id.* at 3 (Feb. Letter); *see also id.* ¶¶ 3(e)-(f). The February Letter states that defendant's failure to respond within 30 days "*is agreement* that no authority exists for the ... NOFTL," *id.* at 3 (Feb. Letter), and that if defendant agrees that no authority exits for the NOFTL, defendant must "release and withdraw" the NOFTL and return to plaintiff "all funds wrongfully seized," *id.* at 3–4 (Feb. Letter); *see also id.* ¶ 3(g).

The February Letter includes three provisions under the sub-heading "IMPLIED CONTRACT, LIQUIDATED DAMAGES AFTER DEFAULT," all under a broader heading titled "EXPRESS NOTICE OF WAIVER OF TORT [6] TO ALL WHO TRESPASS." *Id.* at 4–5 (Feb. Letter) (footnote added); *see also id.* ¶ 3(i) (claiming that plaintiff served upon defendant "An Express Notice Of Waiver Of Tort and a table of Liquidated Damages").

The first of the three provisions states that liquidated damages are necessary to compensate plaintiff for defendant's intentional breaches of the following: "Constitutional Duties at Amendment 4—Security of Property, Amendment 5—Due Process, and Statutory Duties at 18 USC 1018—Official certificates or writings, 26 USC 7214—Offenses by officers and employees of the United States, and 26 USC 620—Assessment [ ] by the United States against [plaintiff's] interests." *Id.* at 4–5 (Feb. Letter) (emphasis omitted). The first provision concludes with the following sentence: "Your silence in this matter is Your Implied Consent to this Liquidated Damages Clause and the amounts herein." *Id.* at 5 (Feb. Letter). The second provision states: "failure to withdraw [the NOFTL] or continuing with [the] [l]evy, without first providing verified and certified evidence to justi-

fy any such action" is agreement by defendant to "summary judgment and a lien against the United States." *Id.* (emphasis omitted). The third provision states: "Trespass on this contract action after default" represents "that party's agreement to summary judgment against the United States as Liquidated Damages in the amount of $4,000,000 ... and an Additional and Immediate consensual lien of $250,000.00 per 30 Day period that any false sanction or penalty is allowed to remain in the Public record." *Id.* (emphasis omitted).

Plaintiff did not receive a response to the February Letter. *Id.* ¶ 3(k). On April 1, 2011 plaintiff sent defendant a letter titled "Notice of Fault with opportunity to cure, 10 Day Demand Letter" (April Letter or Apr. Letter). *Id.* at 10 (Apr. Letter); *see also id.* ¶ 4. According to plaintiff, the April Letter provides notice of defendant's consent, "as reckoned by its conduct, to the terms and conditions of the [February Letter]." *Id.* ¶ 5; *see also id.* at 11 (Apr. Letter). The April Letter states that "[b]y declining to justify it[s] actions in this matter, in combination with the continuing wrongful seizure of [plaintiff's] property, the United States, through it[s] Agents, is consenting to liability per the Waiver Of Tort, an Implied Contract, and the Liquidated Damages clause of [the February Letter]." *Id.* at 12 (Apr. Letter). The April Letter offers defendant two opportunities to cure, *id.* at 11–12 (Apr. Letter), and demands that defendant wire plaintiff $4,250,000 within ten days, "should [d]efendant United States choose not to justify its actions [or] return converted funds without penalty," *id.* ¶ 7; *see also id.* at 12 (Apr. Letter).

Plaintiff claims that defendant has yet to respond "except by its conduct." *Id.* ¶ 8. Plaintiff asserts that defendant has therefore agreed "to pay contractual Liquidated Damages as invoiced herein, in the amount of $4,250,000 ... but has failed to do so after Notice and Demand." *Id.* ¶ 9. Plaintiff requests that the court render judgment in

---

**6.** "Waiver of Tort" is defined in the February Letter as "[t]he election by an injured party, for purposes of redress, to treat the facts as establishing an implied contract, which he may en-

force, instead of an injury by fraud or wrong, for the committing of which he may demand damages." Compl. 4 (Feb. Letter).

plaintiff's favor in the amount of $4,250,00. *Id.* ¶ 12. In addition, pursuant to the provision in the February Letter that defendant pay plaintiff a "consensual lien of $250,000.00 per 30 Day period that" the NOFTL remains in the public record, *id.* at 5 (Feb. Letter), plaintiff's Second and Third Complaints each demand three payments of $250,000 in liquidated damages because of the continued presence of the "unauthorized NOFTL . . . in the [p]ublic record," *see* 2d Compl., Quarterly Invoice at 2 (demanding a total of $750,000 for May 1 through July 1, 2011); 3d Compl., Quarterly Invoice at 2 (demanding a total of $750,000 for August 1 through October 1, 2011).

Defendant asks that plaintiff's claim be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "because he fails to allege the existence of a valid contract and raises only frivolous arguments." Def.'s Mot. 7. Defendant argues in the alternative that, to the extent plaintiff alleges a tax refund action or wrongful levy action, the court lacks subject matter jurisdiction to hear plaintiff's claims, and the Complaint should be dismissed pursuant to Rule 12(b)(1). *Id.* at 2, 11–13.

## II. Legal Standards

### A. Dismissal for Lack of Subject Matter Jurisdiction

■ Subject matter jurisdiction is a threshold matter which a court must determine at the outset of a case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *PODS, Inc. v. Porta Stor, Inc.,* 484 F.3d 1359, 1365 (Fed.Cir.2007). "In deciding whether there is subject-matter jurisdiction, the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004) (internal quotation marks omitted). Although complaints filed by pro se plaintiffs may be held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Vaizburd v. United States,* 384 F.3d 1278, 1285 n. 8 (Fed. Cir.2004), pro se plaintiffs must nevertheless meet jurisdictional requirements, *Bernard v. United States,* 59 Fed.Cl. 497, 499, *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004) (unpublished); *see also Kelley v. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only."). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

■ Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). When determining whether to grant a Rule 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001). However, neither "[t]hreadbare recitals of the elements of a cause of action" nor legal conclusions are entitled to the presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

■ The purpose of Rule 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,* 988 F.2d 1157, 1160 (Fed.Cir.1993). A failure to state a claim upon which relief can be granted warrants a judgment on the merits rather than a dismissal for lack of jurisdiction. *See Gould, Inc. v. United States,* 67 F.3d 925, 929 (Fed. Cir.1995).

## III. Discussion

For the following reasons, the court must dismiss plaintiff's Complaints for failure to state a claim upon which relief can be granted. *See* RCFC 12(b)(6). To the extent that plaintiff's claims may be construed as a tax refund suit or wrongful levy action, the court

must dismiss plaintiff's Complaints for lack of jurisdiction. *See* RCFC 12(h)(3).

### A. Plaintiff Has Failed to State a Claim upon which Relief Can Be Granted

Plaintiff claims that defendant entered into an implied contract with plaintiff that incorporates the terms of the February Letter. In the February Letter, plaintiff promises to accept the NOFTL if the IRS shows proof that it had the authority to file the NOFTL against plaintiff. *See* Compl. 2–3 (Feb. Letter). The February Letter states that a failure by the IRS to identify its justification for filing the NOFTL—by not responding or otherwise—"is agreement that no authority exists for the ... NOFTL," resulting in a demand that the IRS "release and withdraw the ... NOFTL" and return to plaintiff "all funds wrongfully seized." *Id.* at 3 (emphasis omitted). Plaintiff claims that the IRS failed to respond to the February Letter, *id.* ¶ 3(k), the effect of which was "[a]greement by conduct" to the terms of the February Letter, *id.* ¶ 3(f); *see also id.* at 4 (Feb. Letter); *id.* at 11 (Apr. Letter). In plaintiff's view, the IRS breached this implied agreement by continuing its "unjustified actions against [plaintiff's] interests." *Id.* at 11 (Apr. Letter).

■ An implied-in-fact contract[7] is "an agreement ... founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Balt. & Ohio R.R. Co. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816 (1923); *cf. Scott Timber Co. v. United States,* 97 Fed.Cl. 685, 696 (2011) ("Acceptance of an offer can be manifested by [a party's] conduct, and conduct alone can create an implied-in-fact contract."). Like an express contract, a party alleging an implied-in-fact contract "must

show a mutual intent to contract including an offer, an acceptance, and consideration." *Trauma Serv. Grp. v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997). To establish an implied-in-fact contract with the United States, a party must also show that "the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Id.; see also Harbert/Lummus Agrifuels Projects v. United States,* 142 F.3d 1429, 1432 (Fed.Cir.1998) ("[T]he government is not bound by the acts of its agents beyond the scope of their actual authority."). However, as set out below, plaintiff fails to allege three of the required elements of an implied-in-fact contract with the government and therefore fails to state a claim upon which relief can be granted. *Cf. Trauma Serv. Grp.,* 104 F.3d at 1325.

■ Assuming arguendo that the February Letter constituted an offer by plaintiff, plaintiff does not demonstrate that the government accepted this offer. The February Letter states that silence by defendant will be construed as "[i]mplied [c]onsent and acceptance of the terms herein," Compl. 4 (Feb. Letter) (emphasis omitted); *see also id.* (stating that defendant's "silence is implied consent to this waiver of tort as a contractual agreement" (capitalization omitted)); *id.* at 5 (stating that defendant's "silence in this matter is [defendant's] implied consent to this liquidated damages clause and the amounts herein" (capitalization omitted)). However, silence of the IRS simply does not qualify as an acceptance by the government of the terms of the February Letter. *See Radioptics, Inc. v. United States,* 223 Ct.Cl. 594, 609, 621 F.2d 1113, 1121 (1980) ("Silence may not be construed as an acceptance of an offer in the absence of special circumstances existing prior to the submission of the offer....."); *Heydt v. United States,* 38 Fed.Cl.

---

7. An implied-in-fact contract differs from a contract implied in law. *See Toon v. United States,* 96 Fed.Cl. 288, 299 n. 12 (2010). A contract "implied in law is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'" *Hercules Inc. v. United States,* 516 U.S. 417, 424, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (quoting *Balt. & Ohio R.R. Co. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816 (1923)).

"[T]he [Tucker] Act does not reach claims based on contracts implied in law...." *United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (citing *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The Tucker Act does not give a right of action against the United States in those cases where ... recovery could be had upon a contract implied in law.")).

286, 302 (1997) ("The Government's silence, or lack of response, cannot constitute an acceptance of [plaintiff's] demands for payment."); *Pressman v. United States,* 33 Fed. Cl. 438, 443 (1995) (referring to "the general proposition that silence does not constitute acceptance of an offer, absent some prior understanding"). Plaintiff appears to view defendant's failure to abide by the terms of the February Letter—which include releasing and withdrawing the NOFTL—as conduct creating an implied-in-fact contract. *See* Compl. ¶ 3(k) (stating that defendant "did not respond except by continuing actions which it had declined to justify"); *id.* ¶ 8 (stating that defendant did not respond to the February Letter, "except by [defendant's] conduct"); 2d Compl., Quarterly Invoice at 2 (claiming that the government "has *[a]ccepted by conduct* the terms and conditions of the [February Letter]"); 3d Compl., Quarterly Invoice at 2 (same); *cf. Scott Timber Co.,* 97 Fed.Cl. at 696. Plaintiff's conclusory statement that defendant "has agreed by its conduct to pay contractual [l]iquidated [d]amages," *see* Compl. ¶ 9, is unsupported in either fact or law.

Second, plaintiff has failed to allege the existence of consideration. Consideration is manifested by a bargained-for exchange. *See First Fed. Sav. & Loan Ass'n of Rochester v. United States,* 58 Fed.Cl. 139, 150 n. 15 (2003); *Restatement (Second) of Contracts* § 71 (1981). Defendant states, Def.'s Mot. 9, and plaintiff does not dispute, *see* Pl.'s Resp. *passim,* that "any monies claimed by the IRS pursuant to the [NOFTL] are in satisfaction of previous legal liabilities of the plaintiff [so] nothing of value changed hands."

8. Plaintiff's Response claims, without support or explanation, that defendant "by and through the conduct of its Agents, has abandoned any defense regarding the inability of an Agency to establish an implied contract in this case." Pl.'s Resp. to: Def.'s Mot. to Dismiss, or, In the Alternative, Cross-Mot. for Summ. J., and Opp'n To Pl.'s Mot. For Summ. J. (Response), Dkt. No. 26, at 4. In plaintiff's Motion for Summary Judgment, plaintiff "asserts a claim of contractual rights under the doctrine of Estoppel by acquiescence" and claims that defendant, "by its conduct over time[,] ... has lost the legal right to contest the terms and conditions of the implied contract and the liquidated damages clause therein." Pl.'s

 Finally, plaintiff has not alleged that an IRS agent with actual authority to bind the government accepted an offer by plaintiff. *See Confidential Informant,* 46 Fed.Cl. at 1, 7 (2000). Plaintiff sent the February Letter by registered and certified mail to the IRS revenue officer who signed the NOFTL and also sent copies of the February Letter to the commissioner of the IRS and a general counsel of the United States Department of the Treasury. *See* Compl. 1 (Feb. Letter), 8 (NOFTL), 9 (Proof of Service). Even if one of these individuals had actual authority to bind the government, there is no allegation by plaintiff of a response by any of them. *See Radioptics, Inc.,* 223 Ct.Cl. at 609, 621 F.2d at 1121; *Heydt,* 38 Fed.Cl. at 302; *Pressman,* 33 Fed.Cl. at 443.

Accordingly, plaintiff's Complaints must be dismissed for failure to state a claim upon which relief can be granted under RCFC 12(b)(6).[8] *See Bell·Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("Because the plaintiff[ ] here ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.").

### B. The Court Does Not Have Jurisdiction over Plaintiff's Remaining Claims

 To the extent that plaintiff's claim may be construed as a tax refund suit, plaintiff has failed to allege the jurisdictional prerequisites for this court to hear such a suit. *Accord* Pl.'s Resp. 3 (agreeing that the court lacks jurisdiction over such claims). The court's jurisdiction over tax refund suits is limited to suits in which the plaintiff has paid in full the tax liabilities for the years in question. *Abruzzo v. United States,* 24 Cl.

Mot. For Summ. J. on the Liquidated Damages of Implied Contract Table of Authorities and Indexed Proof of Claim attached (plaintiff's Motion for Summary Judgment), Dkt. No. 12, at 8 (emphasis omitted). The court assumes that plaintiff intends in his Response to refer back to the mention of the doctrine of estoppel by acquiescence in his Motion for Summary Judgment.

Even if more fully articulated, the doctrine of estoppel by acquiescence is not of assistance to plaintiff. The court does not view the failure of the IRS to respond to plaintiff's February Letter as acquiescence to "the terms and conditions of the implied contract and the liquidated damages clause therein." *See id.*

Ct. 668, 670 (1991) (citing, inter alia, *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Rocovich v. United States*, 933 F.2d 991, 993–94 (Fed.Cir.1991)). Plaintiff does not claim that the funds subject to the NOFTL have been paid. *See* Compl. *passim;* Pl.'s Resp. *passim.* In fact, included in plaintiff's Complaint is a copy of the NOFTL, which lists "unpaid balance[s] of assessment" associated with tax periods ending on December 31, 2004, December 31, 2005 and December 31, 2006. Compl. 8 (NOFTL) (capitalization omitted). Plaintiff's unpaid balances for his 2004–2006 taxes preclude this court from having subject matter jurisdiction over a tax refund claim, pursuant to the *Flora* full-payment rule. *See Thomas v. United States*, 56 Fed.Cl. 112, 120 (2003); *Daniels v. United States*, 77 Fed.Cl. 251, 255–56 (2007).

▆▆▆ Insofar as plaintiff challenges the underlying validity of the NOFTL, the court lacks jurisdiction to hear plaintiff's wrongful levy action. *Accord* Pl.'s Resp. 3 (agreeing that the court lacks jurisdiction over such claims). Under 26 U.S.C. § 7426(a)(1), wrongful levy actions can be brought by "any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on" a property upon which a levy has made. 26 U.S.C. § 7426(a)(1) (2006). Section 7426 provides that a wrongful levy action is an action by a third party. *See id.* Plaintiff is "the person against whom is assessed the tax out of which such levy arose," *see id.*, and is not a third party. The court therefore lacks jurisdiction over plaintiff's wrongful levy claim.[9]

## IV. Conclusion

Based on the foregoing, defendant's Motions are GRANTED and plaintiff's Motion is DENIED. The Clerk of Court shall DISMISS plaintiff's Complaints for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

---

9. The court's jurisdiction over some wrongful levy claims is uncertain based on the United States Supreme Court's decision in *EC Term of Years Trust v. United States*, 550 U.S. 429, 127 S.Ct. 1763, 167 L.Ed.2d 729 (2007). *See Buser v. United States*, 85 Fed.Cl. 248, 261 n. 14 (2009); *Cherbanaeff v. United States*, 77 Fed.Cl. 490, 495 n. 7 (2007). The court does not address this issue because, "[a]s section 7426 makes clear, wrongful levy actions are limited to third parties to recover funds levied to satisfy others' tax liabilities." *See Buser*, 85 Fed.Cl. at 261 n. 14.